COLORADO–ARIZONA–CALIFORNIA EXPRESS, INC., Plaintiff,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

Denver-Albuquerque Motor Transport, Inc., et al., Intervening Defendants.

Civ. A. No. 7988.

United States District Court
D. Colorado.

Dec. 12, 1963.

Barry & Boyle, Denver, Colo., for Colorado-Arizona-California Express, Inc.

Lawrence M. Henry, U. S. Atty., for the Dist. of Colorado, Denver, Colo., William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., for United States of America.

Robert W. Ginnane, Gen. Counsel, Arthur Cerra, Office of the Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Jones, Eisenhart, Meiklejohn, Kilroy & Kehl, Edward T. Lyons, Jr., Denver, Colo., for Denver-Albuquerque Motor Transport, Inc., Milne Truck Lines, Inc. and Ringsby Truck Lines, Inc.

Charles W. Singer and James C. Hardman, Chicago, Ill., for Milne Truck Lines.

Grant, Shafroth, Toll & McHendrie, Peter J. Crouse, Denver, Colo., for Denver & R. G. W. R. Co., Atchison, T. & S. F. R. Co. and Santa Fe Trail Transportation Co.

Royce D. Sickler, Denver, Colo., for Denver & R. G. W. R. Co.

John C. Street, Denver, Colo., for Colorado & S. Ry. Co.

Hodges, Silverstein, Hodges & Harrington, Denver, Colo., for Chicago, R. I. & P. R. Co.

Barry & Boyle, Denver, Colo., and C. J. Munn, Jr., and W. C. McLaughlin, Chicago, Ill., for Swift & Co.

Barry & Boyle, Denver, Colo., for Cudahy Packing Co., Colorado Pizza Co. and United Fryer & Stillman, Inc.

Before PHILLIPS and PICKETT, Circuit Judges, and DOYLE, District Judge.

DOYLE, District Judge.

The plaintiff herein brought this action upon a complaint seeking to set aside and enjoin the enforcement of orders of the Interstate Commerce Commission denying its application for a certificate of convenience and necessity. Plaintiff had sought authority to conduct operations in interstate commerce as a common carrier by motor vehicle over irregular routes, carrying meat, meat products, meat by-products, including frozen foods and articles distributed by meat packing houses from Denver, Colorado to points in New Mexico, Arizona, Nevada and California.

The present action is pursuant to Title 28 U.S.C. § 1336, which section provides:

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside,

annul or suspend, in whole or in part, any order of the Interstate Commerce Commission. June 25, 1948, c. 646, 62 Stat. 931."

A three-judge district court was convened to hear the case pursuant to Title 28 U.S.C. § 2325.

On May 9, 1963, the Court issued a temporary restraining order enjoining the Commission from canceling the temporary authority which had theretofore been granted plaintiff in MC–124065. Subsequently, on July 24, 1963, hearing was had before the three-judge court on defendants' motion to dissolve the restraining order. This motion was denied and the preliminary injunction was entered. Meanwhile, on May 14, 1963, the Commission continued the temporary authority in effect until further order pending the final decision of the court.

A public hearing presided over by an examiner was held in Denver, Colorado, on March 13, 14 and 15, 1962. On that occasion the subject application was consolidated with the applications of Watkins Motor Lines, Inc. and of Little Audrey's Transportation Company, Incorporated, these applications having been similar to that of the plaintiff. Testimony was offered by plaintiff through witnesses appearing on behalf of various shippers, including Cudahy Packing Company, Colorado Pizza Company, Farmer Pete Packing Company and Carter Meat Company. In addition, United Fryer and Stillman Packing Company testified in support of Watkins and Little Audrey. Numerus motor vehicle common carriers, holders of certificates of public convenience and necessity, appeared and presented evidence in opposition to the applications. The recommended report of the examiner was filed on June 13, 1962. This contained detailed consideration of the facts introduced at the hearing. The examiner recommended that all of the applications be denied. The finding was that the plaintiff was not fit, willing and able to perform the proposed services and, secondly, that the public convenience and necessity did not require the operation for which authority was sought. Thereafter, following the filing by plaintiff of exceptions to the recommended report of the examiner, the Commission, Division I, denied plaintiff's application for a certificate. The Commission affirmed the findings made by the examiner. The ultimate conclusion of the Commission was that plaintiff had failed to establish that the present and future public convenience and necessity required the proposed operation, and further that plaintiff had failed to establish its fitness, willingness and ability to properly conduct the proposed operations or to conform to the requirements of the Interstate Commerce Act and the rules and regulations thereunder.

Plaintiff filed a petition for rehearing on December 15, 1962. This contained letters from various shippers attesting to the quality of plaintiff's service and to the desires of the shippers to have the service. In addition, Swift and Company sought leave to intervene in behalf of plaintiff. This leave was granted. However, the Commission denied the application for rehearing.

Essentially, the issues presented for determination are:

I. Whether the Commission's conclusion denying the application of plaintiff for a certificate is based upon adequate findings and supported by substantial evidence; and

II. Whether there was an abuse of discretion by the Commission in denying the plaintiff's petition for rehearing.

## I.

WHETHER THE EVIDENCE BEFORE THE COMMISSION WAS ADEQUATE TO JUSTIFY THE COMMISSION ACTION DENYING THE APPLICATION DEPENDS UPON SUFFICIENCY OF EVIDENCE TO SHOW THE ADEQUACY OF THE EXISTING SERVICES

■ The adequacy of the existing transportation service is one of the "basic ingredients" in the determination

of public convenience and necessity [1] and an applicant for a certificate of convenience and necessity has the burden of showing by evidence that the proposed service is or will be required by the present or future public convenience and necessity.[2]

The Commission found that the plaintiff, as well as the other applicants had failed to establish a public need for motor transportation in addition to that available at the time of the order: that the supporting shippers' needs, although not shown to be representative of an extensive pattern of distribution, are all able to be met by the protesting carriers, and that the supporting shippers have not adequately utilized the transportation now authorized and willing to meet their needs. This finding is borne out by substantial evidence.

The record discloses that the following points were designated by the supporting shippers as areas where plaintiff's service was needed by them:

New Mexico:
 Gallup—Farmer Pete Packing Company
 Albuquerque—Colorado Pizza Company
Arizona:
 Flagstaff—Farmer Pete Packing Company
 Winslow—Farmer Pete Packing Company
 Phoenix—Cudahy Packing Company, Farmer Pete Packing Co., Colorado Pizza Co., United Fryer & Stillman, Inc.
California:
 San Diego—Cudahy; Colorado Pizza Company
 Los Angeles—Colorado Pizza Company, United, Carter Meat Company

San Francisco—United, Carter
Burbank and Oakland—United
Marysville—San Luis Obispo—United
Nevada:
 Las Vegas—United

In addition, United testified to a need for service to Portland, Oregon, Seattle, Washington, and an unidentified point in Idaho, none of which appear to be directly involved in our review of the order.

The record also shows that the cities involved are served with transportation of the commodities involved by the following motor protestants whom the commission found to be willing and able to meet the needs of the above shippers:

New Mexico:
 Gallup-Illinois-California Express, Inc.; Navajo Freight Lines; Denver - Albuquerque Motor Transport, Inc.
 Albuquerque—ICX, Navajo, Denver-Albuquerque, Rio Grande Motor Way (through interchange) Sante Fe Trail.
Arizona:
 Flagstaff—ICX, Navajo, Ringsby Truck Lines
 Winslow—ICX, Navajo
 Phoenix—Navajo, Ringsby, Milne Truck Lines
California:
 San Diego—Ringsby, Milne (through interchange) Pacific-Intermountain Express
 Los Angeles—ICX, Navajo, Milne, Pacific-Intermountain Express, Ringsby
 San Francisco and Oakland—Navajo, Ringsby, Pacific-Intermountain Express
 Burbank—Milne

1. Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948) affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L. Ed. 485.

2. Robbins v. United States, 204 F.Supp. 78, 81 (1962), citing Sinett v. United States, 136 F.Supp. 37, 40 (D.N.J.1955);

Quickie Transport Co. v. United States, 169 F.Supp. 826, 829 (D.C.Minn.1959), affirmed 361 U.S. 36, 80 S.Ct. 140, 4 L. Ed.2d 111; McBride's Express, Inc. v. United States, 173 F.Supp. 539, 543 (D. C.Ill., 1958); Filson v. I.C.C., 182 F. Supp. 675 (D.Colo., 1960).

Marysville and San Luis Obispo—Ringsby (by interchange with its affiliate Fortier)

Nevada:

Las Vegas—Milne, Ringsby, Pacific-Intermountain Express, Navajo.

In addition, the record shows that the rail protestants, Santa Fe Railway Company and its subsidiary Santa Fe Trail Trucking Company, Denver and Rio Grande Western Railroad Company and The Southern Pacific Company serve all of the points involved, either directly or through interchange with other rail carriers or via trailer-on-flatcar service.

With the exception of the service requested by United and Cudahy, namely, a stop at Phoenix in a direct single-line service en route to Southern California, all of the points named by the supporting shippers except Marysville and San Luis Obispo, California, are served by the direct single-line service of one or more of the protesting motor carriers; and by interlining, many of the protesting shippers can reach all of the points, including an en route stop at Phoenix.

In Ayer v. United States, 139 F.Supp. 440 (N.D.Ga.1956), the Court affirmed the Commission's denial of a certificate where the Commission found that the existing rail and motor service was adequate. The Court said, 139 F.Supp. at pages 443–444:

"We find that there was ample evidence that, as to all but one of the terminals in controversy, there was available motor transportation on a two-carrier basis, and as to the remaining terminal, on a three-carrier basis. This is in addition to the rail service which the Commission found to be 'reasonably adequate.' It is true, as complainant points out, that the language of the Commission's decision stresses the existence of rail transportation. We are required, however, under well recognized principles, in reviewing the decisions of the Commission to examine the record as a whole, and if the Commis-

sion's finding is supported by substantial evidence, it may not be set aside. Universal Camera Co. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

"We do not, therefore, get to the question on which complainant says the case must turn, i. e., whether there would be a basis for setting aside an order of the Commission if such order were based solely on the existence of adequate transportation service of a different class from that offered by the applicant for a certificate.

"The Commission's order is valid, the relief sought is denied, and the complaint is dismissed."

Similarly in the instant case, the Commission has found the existing service, consisting in part of interline carrier arrangements on a two-carrier basis, to be adequate. Plaintiff's contention, that the Commission should not be allowed to consider interline arrangements in its consideration of adequacy of the existing service, is untenable. Were we to accept plaintiff's argument, any motor carrier who could show that no single, direct-line service existed to any specified point in the United States could apply for, and would necessarily be granted certification without a further showing of inadequacy of the interline service available. For instance, a carrier who produced testimony of a shipper showing a need for service to Wilkes Barre, Pennsylvania from Denver, and showing that no single shipper served that city directly, would have sustained his burden of proof, although further testimony might show that the available interlining carriers serve Wilkes Barre, Scranton, and the surrounding cities more than adequately. We think that Congress intended this decision to be one for administrative determination, not to be overturned by the courts except in the absence of substantial evidence supporting the Commission's findings.

Similarly, the Commission may consider the adequacy of existing rail service.[3]

The supporting shippers testified to their needs as follows:

Cudahy, which supported the plaintiff's application only, testified that it needed single-line service to some of the California points; it had satisfactorily used Digby Truck Lines, a multiple carrier arrangement which no longer is in operation. It expressed willingness to use other shippers if available, and now uses Milne with reasonably satisfactory results. Cudahy averages two ·to seven truckloads per week. Plaintiff's argument that Cudahy's traffic to Phoenix and San Diego cannot be handled by the protesting carriers seems to be based upon the misapprehension that the Commission cannot consider the availability of interlining carriers.

The Colorado Pizza Company requires the transportation of fresh and frozen pie dough and pizza pies. It has satisfactorily used Ringsby Truck Lines with only one claim for damages on a less-than-carload shipment, which was satisfactorily handled. The service it now has to New Mexico from Denver-Albuquerque is adequate.

The Farmer Pete Packing Company ships frozen and fresh meats in less-than-carload quantities to New Mexico and Arizona points via private truck. It would now be willing to use any authorized service.

The Carter Meat Company ships fresh meat to California points and has been using protestants Milne and Ringsby as well as the plaintiff. Time is an important consideration on its five to twelve truckloads weekly, and it has been using Milne and Ringsby. Its witness testified that it is satisfied with the available service, but would like a locally based carrier. He felt that the good Milne service was due to the efforts of William A. Burch, who controls the plaintiff corporation but also works as the Milne agent in Denver.

United Fryer and Stillman, the largest Denver-based shipper, did not originally support plaintiff's application. It ships six or seven truckloads weekly to specified points in California, Arizona, and Nevada. Since it ships Kosher meat, which must be delivered within seventy-two hours, the time factor is of great importance to United. It has been using Ringsby, and has experienced approximately twelve delays during a nine-month period. These may have been due in part to the limited loading facilities at the United plant. The Commission considered the delays insignificant when related to the total number of ninety shipments handled for United by Ringsby during the same period of time. United has also used Milne-operated transportation in the past, but has not been solicited recently by Milne. The United witness was not familiar with Milne's present service to Los Angeles and Phoenix, but expressed a willingness to use any other reliable carrier which could provide the needed service. At least two carriers, Ringsby and Navajo, can render service for United within the required time limitations.

The Commission found all of the protesting carriers to be willing and able to provide services for the supporting shippers, and there is nothing in the record to cast doubt upon this finding.

 We cannot agree with the plaintiff's proposition that the failure of some of the protesting carriers to file replies to the plaintiff's exceptions to the examiner's report or to the plaintiff's petitions for rehearing indicated a lack of interest in providing service for the supporting shippers. The burden is upon the plaintiff to show a lack of adequate service, and just as that burden cannot be overcome simply by showing that all of the possible carriers may not have testified,[4] it cannot be overcome by in-

---

3. Schaffer Transportation Co. v. United States, 355 U.S. 83, 90, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957).

4. (See Robbins v. United States, supra, 204 F.Supp. at page 82).

ferences drawn from a fact susceptible to other inferences.

■ Nor can we agree with the plaintiff's contention that the Commission's grant of temporary authority in any way eased the plaintiff's burden of proving public necessity in these proceedings. The certificate of temporary authority, served March 15, 1962, was granted under the provisions of Section 210a of the Interstate Commerce Act, which provides that:

"* * * [T]emporary authority * * * shall create no presumption that corresponding permanent authority will be granted thereafter." (49 U.S.C. § 310a)

Temporary authorization is granted without a thorough investigation into the public need or the operations of the carrier. "To say that [the Commission] acts at its peril, and restricts its freedom of ultimate decision is not only contrary to the language of the statute, but against common sense." Kagan v. United States, (No. 59-743-5, D.Mass., July, 1960).

Similarly, plaintiff's contention that the Commission erred in giving determinative weight to the adequacy of existing service must be rejected. This is based on the J-T Transport and Reddish cases [5] decided together by the Supreme Court under the *contract* carrier provisions of the Interstate Commerce Act, sections 203(a) (15) and 209(b). They turned on the 1957 congressional consideration of the Act and the subsequent amendments which added five criteria for the Commission to consider in granting contract carrier permits. The Supreme Court held that the Commission could no longer place the burden of showing inadequacy of the existing service upon the applicant for a contract carrier's permit, because that approach had been specifically rejected by Congress when it considered the amendments.

Such considerations are not present in the case at bar. As was said in the Robbins case, supra:

"* * * That a particular shipper desires the services in question is not as weighty a factor in a § 207(a) proceeding as it would be in a § 209(b) proceeding for a permit to act as a contract carrier. Cf. Interstate Commerce Commission v. J-T Transport Company, Inc. et al., 368 U.S. 81, 89, 82 S.Ct. 204, 7 L.Ed. 2d 147 (1961)." Robbins v. United States, 204 F.Supp. 78 at page 82 (1962).

■ The cases cited supra are clear as to which party bears the burden of showing that there is a public convenience and necessity for the proposed service. The standard "public convenience and necessity" is not defined in the Act, and the Commission is given a broad discretionary authority to determine, under that standard, whether the showing of a particular applicant is adequate.[6] Since the Commission does, as it is permitted to do, consider the adequacy of the existing service in testing the merits of the application, and since the evidence in this record is ample to show that all of the destination points of the supporting shippers are served with adequate speed and volume by existing carriers, either directly or by interlining with other carriers, it follows that the plaintiff did not sustain its burden. The most that the evidence shows is that some of the supporting shippers might be more *conveniently* served by having a locally based carrier, and that these shippers have a degree of confidence in Mr. Burch, the plaintiff's operator. But a showing of convenience alone is not enough. These facts do not detract from the substantial evidence in the record that the existing service is adequate.

5. I.C.C. v. J-T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1960).

6. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

## II.

WHETHER THE COMMISSION ABUSED ITS DISCRETION IN FAILING TO GRANT PLAINTIFF'S PETITION FOR REHEARING

Plaintiff maintains that the Commission's refusal to grant a rehearing of the case, as requested in plaintiff's exceptions to the examiner's report, and as requested in the petition for rehearing of the Commission's order, was both arbitrary and capricious, and was an abuse of the Commission's discretion.

The petition for rehearing, filed under Rule 1.101(a) of the Commission's General Rules of Practice, tendered the following evidence:

1. Financial statements showing changes since the hearing, dated July 1, 1962, and purporting to show that the plaintiff gained $50,000 in assets, $16,000 in liabilities, and $34,000 in net worth. Also offered was evidence to show that plaintiff had an excess of $19,116.84 of revenue over operating expenses.

2. Evidence of the number, type, and make of trailers and tractors leased and owned by plaintiff (not dated).

3. Evidence of presumably successful operations between the time of the hearing and October 30, 1962, showing all westbound shipments of meats and frozen foods carried by the plaintiff under its temporary authority.

4. Letters addressed to the Interstate Commerce Commission from ten shippers requesting the Commission to reconsider the plaintiff's application, expressing satisfaction with the plaintiff's operation under temporary authority and inability to replace the service with any of the presently certified carriers.

5. Copies of five grants of temporary authority to other carriers, granting both common and contract authority to some of the points involved in plaintiff's application, and granted subsequent to the hearing.

6. A petition to intervene and for a rehearing filed by Swift & Company alleging that it had adequate service at the time of the hearing, but that the cancellation of an interline arrangement has created a need for plaintiff's service.

The petition alleges that the proffered evidence was not available at the time of the hearing. Plaintiff claims to have been unable to develop the additional witnesses at the hearing because of plaintiff's small size and because the hearing was joined, to plaintiff's prejudice, with the hearings on the applications of two larger concerns, Watkins Motor Lines and Little Audrey Transportation Company; that its protests were ignored by the Commission; and that the evidence pertaining to the successful operations of the plaintiff were unable to be presented at the hearing because the Commission refused to grant temporary authority until the day of the hearing. It is further maintained that the Commission admitted a public need for the service by granting additional temporary authority to other carriers after the hearing.

The Commission denied the petition in its order of April 11, 1963, which granted the petition of Swift and Company to intervene. The reason for its denial of the petition for rehearing was that "no sufficient cause appears for reopening the proceedings for rehearing or for further hearing." Plaintiff contends that the Commission failed to give consideration to the substance of its proffered evidence.

Petitions for rehearings before administrative agencies are addressed to the sound discretion of the agencies and only a showing of "the clearest abuse of discretion" can be sufficient to overturn their denial.[7] The Commission's

---

7. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

Rule 1.101(b) provides that a petition seeking to introduce evidence must show that the evidence is not cumulative and that there is reason why the evidence was not previously adduced. Thus, it is obvious that there is a substantial burden on the plaintiff. The courts have held that the summary denial of such a petition in the words "no sufficient cause" is adequate,[8] and that further findings and conclusions are unnecessary if it is clear that the Commission gave due consideration to the petition. We think that the Commission did give due consideration to the petition. In its order of November 20, 1962, the Commission denied plaintiff's initial petition for a rehearing or further hearing, finding that:

> " * * * In [its] petition * * CAC offers at a subsequent hearing to present evidence of (a) seven additional supporting shippers, (b) operations, financial status and compliance in its service subsequent to the hearing under temporary authority, and (c) management of CAC by persons other than W. A. Burch.
>
> * * * In support of its petition CAC gives no explanation why the proposed shipper testimony was not previously adduced or why matters subsequent to hearing should be the basis for an additional hearing. CAC has been afforded an ample opportunity for the submission of evidence at three days of hearing, and at that time CAC gave no indication of need for additional hearing. Moreover, the tendered testimony of seven more shippers is clearly cumulative, and, in the absence of any showing of good cause for rehearing or further hearing, the petition for these reasons is denied."

The evidence which plaintiff seeks now to introduce in a rehearing is substantially the same as that denied in the order quoted above. No explanation, as required by the Commission, has been forthcoming as to why the proffered evidence was not available at the hearing; no showing is made to support the allegation that plaintiff was prejudiced by combining the hearing with hearings on the applications of two larger carriers. In view of the fact that the primary "changed circumstance" relied upon by the plaintiff—the cancellation of a competitive interline arrangement—appears to have occurred prior to the hearing, as testified to by Cudahy, we cannot agree that the circumstances have taken any unexpected turn. Nor does evidence of operations under temporary authority or of grants of temporary authority to other carriers have any logical bearing upon the issue of whether plaintiff sustained its burden of showing public convenience and necessity at the hearing.[9] The mere fact that plaintiff may have been operating successfully and in accordance with Commission regulations does not prove that public convenience and necessity was served. The congressional purpose in passing the Interstate Commerce Act was not to allow any carrier who could make a profit to enter into competition with other carriers, but rather to allow the Commission to make a determination in the public interest.[10] The courts are not concerned with alleged inconsistency with findings made in other proceedings before the Commission.[11] But it is clear, nevertheless, that the Commission did give consideration to the substance of plaintiff's petition. It cannot be said that the Commission's denial of the petition was an abuse of discretion.

Accordingly, the relief prayed for by the plaintiff will be denied and the complaint will be dismissed.

---

8. Convoy Co. v. United States, 200 F. Supp. 10, 14 (D.Ore., 1961); Yourga v. United States, 191 F.Supp. 373 (W.D. Pa., 1961).

9. See Kagan v. United States, supra.

10. See Schaffer Transport Co. v. United States, supra.

11. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S. Ct. 108, 56 L.Ed. 308 (1912).