**CURTIS, INC., Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**and**

**Denver-Albuquerque Motor Transport, Inc. and Ringsby Truck Lines, Inc., Intervening Defendants.**

**Civ. A. No. 7902.**

United States District Court

D. Colorado.

Jan. 24, 1964.

Duane W. Acklie and Richard A. Peterson, Nelson, Harding & Acklie, Lincoln, Neb., for Curtis, Inc.

Anthony F. Zarlengo, Zarlengo & Seavy, Denver, Colo., for Monfort Packing Co., intervening plaintiff.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, Denver, Colo., and John H. D. Wigger, Atty. Dept. of Justice, Washington, D. C., for defendant the United States.

Arthur J. Cerra, Asst. Atty. Gen., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Edward T. Lyons, Jr., Denver, Colo., for intervening defendants Denver-Albuquerque Motor Transport, Inc., and Ringsby Truck Lines, Inc.

Before PICKETT, Circuit Judge, and CHILSON and DOYLE, District Judges.

DOYLE, District Judge.

By this action, the plaintiff seeks to set aside and enjoin the enforcement of orders of the Interstate Commerce Commission denying its application for a certificate of convenience and necessity. The action is brought pursuant to Title 28 U.S.C. § 1336. A three-judge district court was convened to hear the cause pursuant to Title 28 U.S.C. § 2325.

Plaintiff herein had sought, by application filed June 26, 1959, authority pursuant to Section 207(a) of the Interstate Commerce Act [49 U.S.C. § 307(a)] to conduct operations in interstate commerce as a common carrier by motor vehicle over irregular routes, carrying meats, packinghouse products, and commodities used by packinghouses from Greeley, Colorado, to all points in 37 states [1] and the District of Columbia.

On March 22, 1963, the Court issued a temporary restraining order enjoining the Commission from canceling the temporary authority previously granted to plaintiff in MC–113678 Sub 21 TA and MC–113678 Sub 24 TA. On March 29, the Court was advised that the defendants had no objection to the entry of a preliminary injunction, and therefore an injunction was entered which remains in effect during the pendency of this action.

This cause has an unusual history in that the Examiner recommended that authority be granted and one division of the Commission agreed with his report while another division disagreed. The application was at last denied by the full Commission.

On September 24, 1959, a public hearing, presided over by an examiner, was held in Denver, Colorado. At this time plaintiff was already authorized to serve, from Denver, the points of Washington, D. C., New York, New York, and Boston, Massachusetts. In addition, plaintiff had another application pending before the Commission seeking additional authority from Denver to points in seven eastern states.

Testimony was offered on behalf of several protesting carriers.[2]

The application was supported by the Capitol Packing Company, the predecessor of Monfort Packing Company which is now an intervening plaintiff in the action and which is plaintiff's sole shipper. The report of the examiner, filed January 25, 1960, found that the present and future public convenience and necessity require the operation of the plaintiff from Greeley, Colorado to points in 37 states and the District of Columbia, as designated in the application.[3] The Examiner found also that the plaintiff was fit, willing and able to perform the proposed operations. The recommendation was that certification

1. Authority was sought to the District of Columbia and points in Alabama, Arizona, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin.

2. Buckingham Transportation, Inc.; Buckingham Express, Inc.; Buckingham Transfer, Inc. (known also collectively as United-Buckingham Freight Lines); Denver-Albuquerque Motor Transport Inc.; Bethke Truck Lines, Inc.; Watson Brothers Transportation Co. Inc.; Centennial Truck Lines, Inc.; Ringsby Truck Lines; Kroblin Refrigerated Xpress; Sooner Freight Lines; Pacific Intermountain Express Co.; Class I rail carriers in western trunkline territory; and Pacific Southwest Railroad Association.

3. The examiner's recommended territory was from Greeley, Colorado to: Birmingham, Mobile, and Montgomery, Alabama; Phoenix and Tucson, Arizona; Little Rock, Arkansas; Milford and

should be granted to the points specified. There was a further recommendation that the application should be denied in certain respects which are not here material.

Exceptions to the entire recommended grant were filed by Kroblin and Sooner. Denver-Albuquerque, Bethke, and the United-Buckingham carriers excepted to the recommended grants only to points in 13 states. Thereafter, on February 16, 1961, Division I of the Commission granted the application, but only in part, to points in 6 states and the District of Columbia: New Haven, Connecticut; Savannah, Georgia; Lexington, Kentucky; Boston, Massachusetts; New York, New York; Knoxville, Tennessee; and Washington, D. C. The application was denied in all other respects, Commissioner Webb dissenting. The latter Commissioner was of the opinion that the application should have been granted to the extent recommended by the examiner.

Subsequently, on August 22, 1961, on request of the plaintiff, Division I reconsidered its previous findings and order. The report, this time written by Commissioner Webb, found that the present and future public convenience and necessity required plaintiff's operations to the full extent of the examiner's recommendations. The order of February 16, 1961 was set aside and an appropriate order was entered.

Finally, in response to joint petitions of the protestants, the proceeding was again reopened for reconsideration; this time by the whole Commission sitting in general session. Upon this reconsideration, the Commission found in a decision and order of May 14, 1962 (Commissioners Webb and Tucker dissenting):

"That the evidence considered in light of the petitions and replies thereto does not warrant a result different from that reached by the Commission, division I, in its report and order of February 16, 1961, and that the statement of facts, the conclusions, and the findings therein as set forth in the appendix thereto, being proper and correct in all material respects, should be, and they are hereby affirmed and adopted as our own. * * *"

The order of Division I of August 22, 1961, was vacated. An order was entered authorizing service to only the 6 states and the District of Columbia, as provided in the February 16, 1961, order. Plaintiff's subsequent petition for reconsideration of the May 14, 1962 order was denied on November 2, 1962. Plaintiff now seeks judicial review of the May 14, 1962 and November 2, 1962 orders, and reinstatement of the August 22, 1961 order.

Essentially, two issues are presented:

I. Whether the Commission's conclusion denying, to a large extent, the application of the plaintiff for a certificate is based upon adequate findings supported by substantial evidence; and

II. Whether the Commission's decision and order of May 14, 1962, is in violation of Section 8(b) of the Administrative Procedure Act, (Title 5 U.S.C. § 1007(b)) in that it adopts the finding of the division.

Wilmington, Delaware; Indianapolis, Indiana; Wichita and Topeka, Kansas; Louisville and Lexington, Kentucky; Baton Rouge, Lake Charles, and New Orleans, Louisiana; Portland, Maine; Biloxi, Mississippi; Oklahoma City, Oklahoma; Baltimore, Landover, and Salisbury, Maryland; Detroit and Grand Rapids, Michigan; St. Louis and Kansas City, Missouri; Reno and Las Vegas, Nevada; Manchester, New Hampshire; Albuquerque, Gallup, and Santa Fe, New Mexico; Philadelphia, Pittsburgh, and Scranton, Pennsylvania; Olneyville and Providence, Rhode Island; Memphis, Nashville, and Knoxville, Tennessee; Ogden, Provo, and Salt Lake City, Utah; Richmond and Norfolk, Virginia; Charleston and Fairmont, West Virginia; Cudahy, Madison, and Milwaukee, Wisconsin; and points in California, Connecticut, Florida, Georgia, Massachusetts, New Jersey, New York, North Carolina, Ohio, Oregon, South Carolina, Texas, Washington, and District of Columbia.

# I.

## WHETHER THE COMMISSION'S CONCLUSION IS BASED UPON ADEQUATE FINDINGS SUPPORTED BY SUBSTANTIAL EVIDENCE

 As we recently reaffirmed in the case of Colorado-Arizona-California Express v. United States, et al., 1963 (D. Colo.) 224 F.Supp. 894, the law is well settled that an applicant for certification as a common carrier by motor vehicle bears the burden of demonstrating that the present or future public convenience and necessity will be served by the applicant's operations. See also Filson v. I. C. C., 182 F.Supp. 675 (D.Colo. 1960), Robbins v. United States, 204 F. Supp. 78, 81 (E.D.Pa., 1962). Since the phrase "public convenience and necessity" is not defined in the Interstate Commerce Act, and since the purpose of Congress in amending the Act by the passage of the Motor Carrier Act was to "leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity," I. C. C. v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945), the Commission is granted a wide degree of administrative discretion in its decisions. However, a basic ingredient in the determination of "public convenience and necessity" is, and has consistently been held to be, whether the existing facilities are inadequate to meet present or future transportation requirements. Colorado-Arizona-California Express v. United States, supra; Hudson Transit Lines, Inc. v. United States, D.C.N.Y., 82 F.Supp. 153, affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L. Ed. 485 (S.D.N.Y., 1948).

 The decision of Division I of February 16, 1961, which was adopted by the decision of the entire Commission on May 14, 1962, found that the present and future public convenience and necessity only warranted certification to points in 6 states and the District of Columbia, these being the only destination areas shown to be inadequately served by existing carriers. The bulk of the destination areas designated in the application were concluded to be served adequately. This ultimate finding, or conclusion, must be based upon basic findings supported by substantial evidence, Capital Transit Co. v. Public Utilities Commission (1954) 93 U.S.App.D.C. 194, 213 F.2d 176, 187, and if such basis is found, we have no need for further examination of the evidence.

## A. The Evidence of Need for Additional Service

The evidence on behalf of plaintiff's application was presented by only one supporting shipper, the Capitol Packing Company, now known as Monfort Packing Company under which name it is an intervening plaintiff in this action. At the time of the hearing, Capitol Packing Company of Denver and Capitol Packing Company of Greeley were closely affiliated corporations, the latter of which was constructing a new slaughterhouse, to open in March, 1960, in Greeley, Colorado, a community approximately 50 miles north of Denver. The experiences of the Denver branch of the company were relied upon to support the estimates of the company's future needs for transportation. The initial production of the Greeley plant was estimated to be 16,700,000 pounds of meat and meat products monthly, which was a figure forty per cent. higher than the production of the Denver plant and which would make Capitol the largest plant in the Greeley area, providing approximately forty truckloads of meat and meat products per week to the motor carrier industry. The balance, about 65 to 70 per cent. of all shipments, was expected to move by rail. The shipper testified that it would ship from Greeley to 151 specified points in 37 states and the District of Columbia. All but four of these points, it appeared, could be reached more or less satisfactorily from Denver. The four points to which service was found to be unavailable were listed in the final grant of authority.

The witness for Capitol, Mr. Averch, testified that his company desired bet-

ter transportation service than had been available, due to the competitive nature of the packing business and the fact that there were not enough carriers with enough equipment in Denver to meet its needs. Seventy-two hour delivery to far-ranging points in the United States allowed Capitol to deal in kosher meats and to take advantage of fluctuating market conditions as well as to avoid shrinkage. Interline service would appear to be frequently necessary from Greeley, due to the fact that few interstate carriers are authorized to serve Greeley, and the witness expressed dissatisfaction with interline service in general. He gave testimony as to the type of refrigerated equipment necessary and the past difficulties of the company in obtaining equipment from the authorized carriers. Exhibits were introduced showing where the traffic would move and the witness discussed the degree to which transportation costs were significant in Capitol's operations. Testimony was offered as to the desirability of a Greeley-based carrier, having terminal, loading, and steam-cleaning facilities in the immediate area of the plant. It further appeared that the addition of lamb and sheep products to the company's product line might broaden the market areas to which the company desired transportation service. However, no points needing additional service were listed.

The examiner found this showing to be sufficient to prove that the present and future public convenience and necessity require plaintiff's operations.

B. *The Evidence of Adequacy of the Existing Service*

It is undisputed that the supporting shipper had been able to reach from Denver all but four of the 151 points to which it desired shipments. Although there was evidence of difficulty in obtaining equipment from the authorized carriers, there was no evidence of any serious loss of business or even serious inconvenience due to this difficulty. Because there appeared to be no dispute as to the authorities and abilities of the existing carriers, the Commission did not give detailed consideration to the protesting shippers' abilities to serve each and every destination point. Because the burden of showing need is upon the applicant, we cannot agree that the Commission erred in failing to require affirmative proof of these authorities and their interline connections. To require such proof would place upon the Commission a burden of needlessly sifting through certificates of authority and interline agreements which are not even in controversy.

The shipper expressed a willingness to use interline services from Greeley if such service were shown to be responsive to its needs. These services would generally transport shipments to Denver, where they would be interlined with the carriers having the proper authorities.

The record amply demonstrates that those protestants which collectively served most of the specified destination points had access to additional equipment if it became necessary to supplement the large fleets which they had on hand. Each protestant expressed a willingness and a desire to participate, to the extent it was authorized, in the contemplated traffic. We cannot agree with plaintiffs' argument that failure on the part of one of the protestants to file exceptions to the report and recommended order of the examiner indicated a change of heart or a lack of interest in providing service to the supporting shipper. This surely cannot be a standard of judgment, for not only would this be an "inference drawn from a fact susceptible to other inferences," Colorado-Arizona-California Express v. United States, supra, but would place a burden of practically interminable litigation upon every existing shipper which decided to protest an application.

Those protestants which served mainly as intrastate carriers, whose function it would be to pick up shipments in Greeley and to interline them with interstate carriers in Denver, presented evidence that they would obtain additional equipment in Denver

from the interstate carrier involved; would drive the equipment to Greeley in one and one-half to two hours; would pick up the shipment; drive back to Denver; and interchange vehicles with the interstate carrier. Both the intrastate protestants and the interstate protestants expressed a desire to perform this service and felt that they could perform satisfactorily. Since this type of service had not been tried, the Commission could find no substantial basis for finding that it was inadequate or unsatisfactory. We agree with the Commission that there is no such basis in the record. Interline service between two, or even among three carriers, cannot be said to be per se inadequate. Ayer v. United States, 139 F.Supp. 440 (N.D. Ga., 1956); Colorado-Arizona-California Express v. United States, supra. This is particularly true where, as here, transportation is sought to very distant points.[4]

■■■ We have here a situation similar to the extreme example given in California Express, supra. Here also there is convenience to the supporting shipper; the only basis for questioning the adequacy of the existing carriers' ability to perform the necessary service is one of time and directness of routes. These matters were weighed by the Commission and found to be of less importance to the public's convenience and necessity than they were to the supporting shipper's convenience and necessity. But we are not here concerned with the weight given to the evidence by the Commission, the soundness of the reasoning by which

the conclusions were reached, or with whether the findings are consistent with those made in similar cases. Virginian R. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■■■ Plaintiff earnestly and somewhat persuasively argues that any determination which the Commission could make under the circumstances present here, where services had not been tried on the bases which either plaintiffs or protestants seek to perform, "entails a prophecy so far as future requirements are concerned." This however, is not fatal. United States v. Detroit, etc. Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945). In that case the Supreme Court, in upholding a grant of certification, held:

"* * * If the Commission were required to deny these applications unless it found an actual inability on the part of existing carriers to acquire the facilities necessary for future transportation needs, a limitation would be imposed on the power of the Commission which is not found in the Act. The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. * * * Forecasts as to the future are necessary to the decision." (326 U.S.

4. In the Colorado-Arizona-California Express case, we noted: "* * * Were we to accept plaintiff's argument, [that the Commission should not be allowed to consider interline arrangements in its consideration of adequacy of existing service] any motor carrier who could show that no single, direct-line service existed to any specified point in the United States could apply for, and would necessarily be granted certification without a further showing of inadequacy of the interline service available. For instance, a carrier who produced testimony of a shipper showing a need for service to Wilkes Barre, Pennsylvania from Denver, and showing that no single shipper served that city directly, would have sustained his burden of proof, although further testimony might show that the available interlining carriers serve Wilkes Barre, Scranton, and the surrounding cities more than adequately. We think that Congress intended this decision to be one for administrative determination, not to be overturned by the courts except in the absence of substantial evidence supporting the Commission's findings."

at 240–241, 66 S.Ct. at 77, 90 L.Ed. 38)

Similarly, we cannot delimit the power of the Commission by requiring it to find an actual present ability on the part of the existing carriers to render the service which may be necessary in the future. The Commission's finding that the shipper " * * * has an adequate motor carrier service available from Greeley * * * " does involve an element of prediction which could well fail to materialize. Nevertheless, such prediction could be rationally made upon the evidence before the Commission. It therefore must follow that the Commission's finding that the shipper " * * * has an adequate motor carrier service available from Greeley to those points to which it now ships from Denver" is supported by substantial evidence.

The Commission stated, as a matter of policy, that it is " * * * fundamental that existing carriers should be afforded an opportunity to transport all traffic which they can handle adequately, efficiently, and economically." Such policy is indeed consistent with the National Transportation Policy. Plaintiff's assertion that if the estimate of future needs does not prove to be sound a re-application would be useless since the Commission would require proof of changed circumstances, does not necessarily hold. The realities of practice may themselves reveal the changed circumstances. Plaintiff may be able to show that the available carriers can not perform in accordance with its promises.

Since the cases cited supra are clear as to which party must bear the burden of showing that the public convenience and necessity favor the proposed service; and since the evidence in the record is ample to show that all of the destination points in controversy could be served with reasonably adequate speed and volume by the existing carriers, we can only conclude that the Commission did not err in holding that plaintiff, Curtis, failed to meet the demands of proof of convenience and necessity.

## II.

## WHETHER THE COMMISSION'S FINAL DECISION IS LACKING IN ESSENTIAL FINDINGS OR REASONS

Plaintiff attacks the Commission's decision and order of May 14, 1962, on the ground that the decision failed to give adequate reasons for reversing the August 22, 1961, decision of Division I, by which certification had been granted. The relevant portion of the final decision, which has been set out earlier in this opinion, recites that the entire Commission felt that the evidence did not warrant the broad grant of authority as ordered by Division I, and adopted the earlier decision of Division I, dated February 16, 1961. Plaintiff argues that this procedure contravenes the requirement of "findings and conclusions as well as the reasons or basis therefor" as provided in Section 8(b) of the Administrative Procedure Act. (Title 5 U.S.C. § 1007(b))

It should first be noted that the whole Commission is vested with authority to reverse, change, or modify a decision of a division of the Commission. Section 7(a), Administrative Procedure Act (5 U.S.C. § 1006(a)); Paragraphs 6 and 7, Section 17, Interstate Commerce Act, (49 U.S.C. § 17, pars. 6 and 7). But it is plaintiff's contention that due to the Commission's vacillation, the final decision, if it reverses the immediately prior decision, must be accompanied by not only the findings of fact and conclusions of law leading to the final order, but must also include at least one reason for the fact that the whole Commission decided to reverse.

As authority for this position, plaintiff cites Amarillo-Borger Express v. United States, (N.D.Tex., 1956), 138 F.Supp. 411; judgment vacated as moot, 352 U.S. 1028, 77 S.Ct. 594, 1 L.Ed. 598; Dixie Carriers, Inc. v. United States, (S.D.Tex., 1956), 143 F.Supp. 844; and Long Island R. Co. v. United States, (E.D., N.Y.1956) 140 F.Supp. 823. But in none of these cases in which

**902**

the courts reversed summary vacations of prior orders, did the vacating orders have a prior reasoned opinion to fall back upon and to adopt as its own. Essentially, the plaintiff is seeking the subjective reasoning of the Commission. "There is no requirement that the commission specify the weight given to any item of evidence or fact or disclose mental operations by which its decisions are reached." Baltimore & O. R. Co. v. United States, (1936) 298 U.S. 349, 359, 56 S.Ct. 797, 80 L.Ed. 1209. Our review can extend only to the Commission's final, definitive report and order of May 14, 1962, and not to the preliminary stages of preparatory steps. Lang Transportation Corp. v. United States (S.D.Calif., 1948) 75 F.Supp. 915. It should be noted that this decision was reached upon the first consideration by the entire Commission and that of eleven members serving on that body, only two have at any time endorsed the view that the application should be granted to the extent recommended by the examiner. The decision adequately adopted a prior reasoned report which had set out a sufficient basis for the action taken. There was no necessity for further explanation as to the cause of the Commissioners' votes.

Nor can we find any abuse of discretion in the Commission's November 2, 1962 denial of a rehearing.

Accordingly, the relief prayed for by the plaintiff and the intervening plaintiff must be denied and the complaint must be dismissed.

Pursuant to the opinion of the three-judge Court convened herein, it is

Ordered:

1. That the application for a permanent injunction be denied;

2. That the Order Granting Preliminary Injunction entered on March 29, 1963, be dissolved;

3. That the action and the complaint of the plaintiff and the intervening plaintiff be dismissed at the plaintiffs' costs.