**TRI–STATE MOTOR TRANSIT CO., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. No. 2290.**

United States District Court, W. D. Missouri, Southwestern Division.

Sept. 6, 1973.

Albert Thomson, of Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, Mo., for plaintiff.

John D. Wigger, Atty., Dept. of Justice, Washington, D. C., for United States.

Theodore C. Knappen, Atty., I. C. C., Washington, D. C., for I. C. C.

Harold G. Hernly, Arlington, Va., for Baggett Transportation Co.

Jack Fleischaker, Joplin, Mo., for C. I. Whitten Transfer Co.

Before LAY, Circuit Judge, and COLLINSON and HUNTER, District Judges.

PER CURIAM.

Tri-State Motor Transit Co., a common carrier, made application to purchase the irregular route authorities of H. Messick, Inc., a contract carrier, and to convert them to common carrier rights. It also sought to tack together the authorities of Messick and simultaneously to tack its own operating rights onto the newly acquired rights of Messick for a proposed single-line service.[1] The Interstate Commerce Commission approved Tri-State's authority to acquire Messick, but denied it permission to tack the newly acquired rights onto Tri-State's present authority, thus precluding the establishment of a proposed single-line service under the unified rights. The Commission rested its decision on the failure of Tri-State to present evidence of need for single-line service. The Commission likewise denied Tri-State authority to tack together the newly acquired authorities of Messick. These authorities are referred to as Sub-No. 149 and Sub-No. 151. Review is sought from these rulings. We affirm the Commission's order.

■ The Commission found that the tacking of Sub-No. 149 and Sub-No. 151 was a "critical consideration" in the purchase of Messick's operating rights. The Commission held that Tri-State did not properly give notice to the public of the contemplated tacking together of the authorities then held by Messick. On this basis the authority to tack Sub-Nos. 149 and 151· together was denied. In Eagle Motor Lines, Inc. v. United States, 331 F.Supp. 80, 82 (N.D.Ala. 1971), the court observed:

"Failure adequately to warn competing carriers of the authority actually sought and intended to be used, albeit by tacking, naturally has an in-

---

1. Baggett Transportation Co. and C. I. Whitten Transfer Co., competitors of plaintiff and protestants at the hearing below, are intervening defendants.

jurious impact upon the integrity of the administrative process."

Tri-State urges that the Commission's interrogatories relating to tacking, in plaintiff's application for conversion of Messick's irregular routes, referred only to tacking onto *presently* held authority or authority which was being sought under a "pending" application. When plaintiff filed application to acquire the Sub-No. 151 authority, Sub-No. 149 was pending. However, Tri-State urges that the filing of the two applications was a technical circumstance and that if only one application had been filed no notice of tacking would have been required since there would have been no "pending" application. However, as the government urges, the Messick authorities involved separately stated operating rights and whether they were listed in one application or two is immaterial. Cf. T. T. Brooks Trucking Co., Inc., Conversion Application, 81 M.C.C. 561 (19  ). We agree.

Under the circumstances we cannot say that the Commission's ruling restricting the authority for lack of sufficient public notice was arbitrary or lawless.

The Hearing Examiner also held that tacking of Sub-Nos. 149 and 151 to other authorities held by plaintiff would result in a "new service" for which no need had been demonstrated.[2] Tri-State argues that the Commission's conclusion is not supported by the record.

■ Under the Interstate Commerce Act, 49 U.S.C. § 307, the Commission must find that public convenience and necessity required the proposed new service before it will be granted. Plaintiff has the burden of demonstrating the public need. See, e. g., Richard Dahn, Inc. v. ICC, 335 F.Supp. 337 (D.N.J. 1971); Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894 (D.Colo.1963); Quickie Transport Co. v. United States, 169 F.Supp. 826 (D.Minn.), aff'd mem., 361 U.S. 26, 80 S.Ct. 140, 4 L.Ed.2d 111 (1959).

■ The Examiner reviewed in detail the transportation requirements of the four shippers supporting plaintiff's application and found that the shippers' transportation needs were adequately met by existing service. The record does show that some shippers would have preferred plaintiff's new through service because they could have substituted single-line service for joint-line service. Two of these shippers based their preference on safety factors.[3] However, the record is substantially lacking in evidence demonstrating any safety problems encountered under the existing service. Intervening defendants Baggett and Whitten, competitors of plaintiff, showed that they were adequately meeting the safety needs of the shippers they serve. Each has an excellent safety record. In essence, plaintiff's evidence shows only that some shippers would have preferred the convenience of plaintiff's single-line service. However, it is well settled that "mere preference of a shipper for the service of a specific carrier [does not] warrant certification of service by that carrier."

Plaintiff argues that the Commission's failure to specifically limit its order to authorities *presently* held by plaintiff means that the Commission intended also to impose the tacking restriction against authorities to be acquired by plaintiff in the future. We find this argument unconvincing. In its brief and at the hearing before this court, the Commission disavowed any intent to apply the restriction to authorities subsequently acquired by plaintiff.

---

2. The Hearing Examiner proposed that the authority granted in Sub-Nos. 149 and 151 be restricted against tacking or joining "with any authority *presently* held by Tri-State Motor Transit Co. . . . for the purpose of conducting through service . . . ." (Our emphasis). The Commission's order reads as follows:
"(1) The separate authorities granted herein are restricted . . . against tacking or joining directly or indirectly, with any other authorities held by carrier, for the purpose of performing a through service . . . ."

3. Plaintiff and its competitors are engaged in the business of transporting explosives. Safety is thus an important factor.

Robbins v. United States, 204 F.Supp. 78, 81 (E.D.Pa.1962). See also Lester C. Newton Trucking Co. v. United States, 264 F.Supp. 869, 885 (D.Del.), aff'd mem., 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29 (1967); Curtis, Inc. v. United States, 225 F.Supp. 894, 900 (D. Colo.), aff'd mem., 378 U.S. 128, 84 S.Ct. 1658, 12 L.Ed.2d 744 (1964); Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894, 898 .(D.Colo. 1963); and Ayer v. United States, 139 F.Supp. 440, 443–444 (N.D.Ga.1956).

We find substantial evidence in the record as a whole to support the Commission's conclusion. Illinois Central R. R. v. Norfolk & W. Ry., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966).

Finding no error, the petitioner's complaint is accordingly ordered dismissed.