**LEMMON TRANSPORT COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Chemical Leaman Tank Lines, Inc., Intervening Defendant.**

**Civ. A. No. 73–C–183–A.**

United States District Court, W. D. Virginia.

May 13, 1975.

Wilmer B. Hill, Washington, D. C., Charles L. Harrington, Marion, Va., for plaintiff.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., for United States.

Fritz R. Kahn, General Counsel, Hugh W. Cuthbertson, Washington, D. C., for I.C.C.

Leonard A. Jaskiewicz, Steven L. Weiman, Grove, Jaskiewicz & Gilliam, Washington, D. C., Raymond R. Robrecht, Salem, Va., for intervening defendant Chemical Leaman Tank Lines, Inc.

## OPINION

Before WIDENER, Circuit Judge, TURK, Chief District Judge, and DALTON, District Judge.

WIDENER, Circuit Judge:

This case arose due to the closing of Olin Corporation (Olin) facilities at Saltville, Virginia, and the subsequent transfer of some of Olin's operations to other areas, resulting in transportation pattern changes for their chemical goods. Lemmon Transport Company, Inc. (Lemmon) seeks to set aside Interstate Commerce Commission (ICC) orders denying its request for a certificate of public convenience and necessity authorizing it to transport certain chemicals from Olin's new location at Charleston, Tennessee, to various southern states. One protestant, Chemical Leaman Tank Lines, Inc. (Chemical Leaman) intervened as defendant in this action. Jurisdiction is under 28 U.S.C. §§ 1336, 2325.[1]

Lemmon claims that the ICC made inadequate findings to support denial of its petition, and that it failed to give weight to certain factual matters which, if considered, would show there is no substantial evidence to support the order rendered. Because we find no ground to upset the ICC's decision and orders in this case, relief is denied.

Lemmon filed its application with the ICC on February 28, 1972, under the Interstate Commerce Act, 49 U.S.C. §§ 306(a) and 307(a), to operate as a common carrier, in interstate or foreign commerce, transporting chemicals in bulk (with two minor restrictions) from Charleston, Tennessee to points in nine surrounding states. The ICC granted temporary authority for the transportation of caustic soda and chlorine from Charleston to points in these states, and the temporary authority was extended until a final determination of the permanent authority application. The ICC handled Lemmon's application under its modified (no oral hearing) procedure, and both Lemmon and the protestant, Chemical Leaman, filed affidavits in support of their respective positions. The final order denying Lemmon's application was entered on November 14, 1973.

The record shows that Lemmon had rather limited authority to transport chemicals in bulk when the Olin operation at Saltville ceased (see App. A to Lemmon motion for TRO), although it had, and still has, substantial operating authority to transport other bulk commodities to various points throughout the country. Lemmon had been transporting soda ash, caustic soda, and chlorine from the Olin Saltville operation since 1958. When the Saltville facility closed, production of caustic soda and chlorine were moved by Olin to its facilities in Charleston, Tennessee and Augusta, Georgia, but the soda ash operations were discontinued altogether. At the time of the transfer, Lemmon was authorized to transport caustic soda and chlorine from Saltville to certain cities and points in Tennessee, West Virginia, North Carolina, and South Carolina. Also, Lemmon already had

---

1. Jurisdiction has since been changed to the United States Court of Appeals. See PL 93–584; 88 Stat. 1917.

authority to transport caustic soda and chlorine from Charleston to points in Kentucky and Mississippi. (See Ex. A to *Lemmon* motion for TRO). Lemmon's application in this proceeding, although it had as its basis the argument that it should be allowed to "follow the traffic" (e. g. serve the same authorized destination points from the shipper's new origin), sought additional authority to transport all chemicals from Olin's Charleston plant, with two restrictions, to points in a nine state area.

The ICC, in its order, made the following findings in denying Lemmon's application. It noted that Lemmon essentially sought to follow Olin's traffic to Charleston; that while it sought broad chemical authority, the only commodities for which a need had been shown from Charleston were chlorine and caustic soda (noting that Lemmon had been granted temporary authority for same); that one of Olin's divisions and three Olin consignees support the proposed service; that Lemmon already had permanent authority to transport caustic soda and chlorine from Charleston to two of the proposed destination states (Kentucky and Mississippi); that Chemical Leaman held appropriate authority to meet Olin's and Olin consignees' reasonable transportation needs, and was ready, willing and able to do so; and that, although Olin had referred to certain service delays in Chemical Leaman's service, there was no showing it could not substantially satisfy Olin's and consignees' overall requirements. The ICC further stated the normal rule that existing carriers are entitled to transport all authorized traffic that they can efficiently and economically handle, within their territories, before a new competitive service may be authorized, and that mere preference for a particular carrier is insufficient to warrant a grant of authority. The ICC concluded by stating it was not justified in instituting a new competitive service absent a showing that existing carriers are unable or unwilling to satisfy Olin's and consignees' reasonable requirement for transportation. Since, the ICC concluded, Lemmon had failed to establish that present or future public convenience and necessity required its proposed operation, the application was denied.

Lemmon's first contention is that the Administrative Procedure Act, 5 U.S.C. § 557(c), which in essence requires the reasons or basis for agency findings and conclusions concerning all material issues to be in the record, was not complied with. Lemmon argues that the ICC should at least have discussed its reasoning as to how and why it weighed the various factors raised by the parties in arriving at its decision.

 It is beyond dispute, however, that the Administrative Procedure Act (APA) does not require the ICC to furnish an analysis of each item of evidence nor to disclose the mental processes through which the decision was reached. As long as its findings are sufficiently complete so that the reviewing court can discern with confidence the agency's conclusions and underlying reasons, and if its findings are supported by substantial evidence based on the record as a whole, the findings will be upheld. See *Alabama G.S.R. Co. v. United States,* 340 U.S. 216, 227–28, 71 S.Ct. 264, 95 L.Ed. 225 (1951); *Kent Freight Lines v. United States,* 341 F.Supp. 787, 789–90 (D.Md.1972) and cases cited. We think the ICC has adequately set forth its findings and supporting reasons.

Specifically, Lemmon asserts that the ICC has failed to evaluate properly its proposal in the light of the "follow the traffic" aspects of the case, that the ICC has failed to discuss the bearing of its temporary authority grant as it affects its application, and that the ICC holding has begged the issue of whether Lemmon's service was superior to that of Chemical Leaman, the protestant.

 49 U.S.C. § 307(a) does not define "public convenience and necessity," but states only that the ICC must find an applicant's proposed service is or

will be required by that standard. Shortly after passage of the Motor Carrier Act, the ICC summarized the question which must be resolved in each case as being the factual determination of "whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operation of existing carriers contrary to the public interest." Pan American Bus Lines Operation, 1 M.C.C. 190, 203 (1936). The ICC is the arbiter of the facts in each case, e. g. ICC v. Parker Motor Freight, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945), and a basic ingredient considered in determining "public convenience and necessity" is the question of whether existing facilities and service are adequate for public convenience and need. Newton Trucking Co. v. United States, 264 F.Supp. 869, 884 (D.Del.1967), aff'd. 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29 (1967); Curtis, Inc. v. United States, 225 F.Supp. 894, 898 (D.Col. 1964), aff'd. 378 U.S. 128, 84 S.Ct. 1658, 12 L.Ed.2d 744 (1964). Of course, the applicant has the burden of proving that the proposed service is required by the public convenience and necessity. E. g. Newton Trucking Co. v. United States, supra.

■ Lemmon's assertion that the ICC did not properly apply the "follow the traffic" doctrine is without merit. "Follow the traffic" is but one element of the circumstances which the ICC must weigh in deciding whether the approval of an application is required by public convenience and necessity, and it alone should not be the ground for granting authority. Petroleum Carrier Corp. v. United States, 258 F.Supp. 611, 615 (M.D.Fla.1966); Smith and Solomon Trucking Co. v. United States, 120 F.Supp. 277, 279–80 (D.New Jersey 1954). The ICC report correctly recognized the essence of Lemmon's application as seeking to "follow the traffic," and it is implicit in that recognition that the "follow the traffic" aspect was considered by the ICC, along with the other facts and circumstances, in reaching its decision.

■ Lemmon has presented little evidence showing that existing carriers were not giving adequate service in the area. There were statements from three of Olin's consignees indicating a preference for Lemmon's services, but there was no assertion that other carriers could not serve their needs. Also in evidence was a statement from an Olin representative that on three occasions, one of which was during a rail strike, Chemical Leaman had been unable to provide sufficient service. While it is true that inadequacy of present service is not a necessary finding as a prerequisite to the issuance of a certificate, just as the "follow the traffic" doctrine is not a controlling element, it is to be considered along with all the related factors, such as the desirability of competition, desirability of different kinds of service, and the desirability of improved service. See Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646, 652–53 (D. N.H.1964), for a good discussion. In view of the vast amount of shipping Chemical Leaman provides for Olin and its consignees, we think the ICC was justified in refusing to draw the conclusion of inadequacy of present service from evidence showing insufficient service on a few isolated occasions. Lemmon simply failed to meet its burden of proving existing service inadequate. Substantial evidence supports the ICC finding that there was no showing that existing carriers are unwilling or unable to satisfy reasonable transportation requirements.

■ Nor is the fact that Lemmon had acquired temporary authority to serve the Charleston facility sufficient reason to affect the ICC decision. 49 U.S.C. § 310a(a), under which the temporary authority was granted, specifical-

ly states that no presumption that corresponding permanent authority will be granted is created by the grant of temporary authority. In addition, courts considering the matter have noted that the standard for a grant of temporary authority is not the same, and that a grant of temporary authority does not ease the petitioner's burden of proving public convenience and necessity. H C & D Moving and Storage Co. v. United States, 317 F.Supp. 881, 883 (D. Hawaii 1970); Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894, 900–02 (D.Col.1963).

■■■■ In sum, Lemmon would have us reweigh the evidence and reach an opposite result. But this we cannot do, for our function in this regard is to determine whether the ICC has acted within its congressional power, without error of law, and whether its decision is supported by substantial evidence on the record as a whole, without being arbitrary or capricious. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–36, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Ashbury v. United States, 298 F.Supp. 589, 591 (W.D.Va.1969); Houff Transfer, Inc. v. United States, 291 F.Supp. 831, 837 (W.D.Va.1968). We find substantial evidence in the record to support the decision of the ICC; that its action was neither arbitrary nor capricious; and that it was in accordance with law.

We think the essence of this case is covered in the following quotation from ICC v. Parker Motor Freight: "The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity." 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051. Here, the Commission has decided the public convenience and necessity would not be served by Lemmon's additional motor service. We may not substitute our "view concerning what should be done, whether with respect to competitive considerations or others, for the Commission's judgment upon mat-

ters committed to its determination, if that has support in the record and applicable law." United States v. Pierce Auto Lines, at p. 536, 66 S.Ct. at p. 698.

Since we are of opinion the decision of the ICC has support in the record and applicable law, the complaint will be dismissed.

An order is this day entered consistent with this opinion.