**MOBILE HOME EXPRESS, LTD.,**
**Plaintiff,**

**v.**

**UNITED STATES** of America and Interstate Commerce Commission, Defendants, and National Trailer Convoy, Inc. and Morgan Drive Away, Inc., Intervening-Defendants.

**Civ. A. No. 71–475.**

United States District Court,
W. D. Oklahoma.

Jan. 26, 1973.

David D. Brunson, Oklahoma City, Okl. (R. L. Dugger of Brunson & Brunson, Oklahoma City, Okl., on the brief), for plaintiff Mobile Home Express, Ltd.

Lee A. Rau, Atty., Dept. of Justice, Washington, D. C., and Jerry Cord Wilson, Asst. U. S. Atty., Oklahoma City, Okl. (Richard W. McLaren, Asst. Atty. Gen., Washington, D. C., and William R. Burkett, U. S. Atty., Oklahoma City, Okl., and Gregory B. Hovendon, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendant United States.

H. Gordon Homme, Atty., I. C. C., Washington, D. C. (Fritz R. Kahn, Gen. Counsel, and Betty Jo Christian, Associate Gen. Counsel, I. C. C., Washington, D. C., on the brief), for defendant I. C. C.

Leonard A. Jaskiewicz, Washington, D. C., Fred Rahal, Jr. and Richard O. Battles, Tulsa, Okl., and James W. Shepherd, Oklahoma City, Okl. (Foliart, Shepherd, Mills & Niemeyer, Oklahoma City, Okl., on the brief), for intervening defendant National Trailer Convoy, Inc.

William J. Lippman, Washington, D. C., and James W. Shepherd, Oklahoma City, Okl. (Singer & Lippman, Washington, D. C., and Foliart, Shepherd, Mills & Niemeyer, Oklahoma City, Okl., were on the brief), for intervening defendant Morgan Drive Away, Inc.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief District Judge, and EUBANKS, District Judge.

## MEMORANDUM OPINION AND ORDER

HOLLOWAY, Circuit Judge.

This action was brought by Mobile Home Express, Ltd. (Mobile) to have an order of the Interstate Commerce Commission (the Commission) denying a certificate of public convenience and necessity set aside. See 5 U.S.C.A. § 702; 28 U.S.C.A. §§ 1336 and 2321 et seq.; 49 U.S.C.A. §§ 17(9) and 305(g). The permanent authority for Mobile in controversy before us is to transport trailers designed to be drawn by passenger automobiles in initial movements over irregular routes from Lawton, Oklahoma, and Wichita Falls, Texas, to points in twelve midwestern and southwestern states as a common carrier. The Commission denied the permanent authority sought, 112 M.C.C. 765 (1971), and this three-judge suit to review the ruling followed.

The background facts concerning the administrative proceedings are as follows. In 1969 Mobile had applied for temporary authority to conduct operations in the transportation of trailers designed to be drawn by passenger automobiles. Temporary authorization was granted and continued for such transportation in initial movements from Lawton, Oklahoma, to points in ten states—Texas, New Mexico, Arizona, Colorado, Wyoming, Kansas, Missouri, Arkansas, Louisiana and Mississippi.

The permanent authority sought by Mobile was for common carrier transportation by motor vehicle, over irregular routes, of house trailers designed to be drawn by passenger automobiles, in initial movements from Lawton, Oklahoma, and Wichita Falls, Texas, to all points in the United States, except Alas-

ka and Hawaii. Review Board Number 2 granted permanent authority for points in Oklahoma and Illinois in addition to points in the previously mentioned ten states.

Mobile's permanent authority was opposed by National Trailer Convoy, Inc. of Tulsa, Oklahoma (National), and Morgan Drive Away, Inc. of Elkhart, Indiana (Morgan), which companies are both intervening defendants in this court action. National and Morgan hold authority for comparable transportation services, with minor differences from the routes sought by Mobile which are not relevant here.

The Commission followed its modified procedure in hearing Mobile's application for permanent authority. See 49 C.F.R. § 1100.45, et seq. On consideration of verified proofs of Mobile and the protestants, Review Board Number 2 of the Commission issued an order concluding that the public convenience and necessity did require the proposed transportation from Lawton, Oklahoma, and Wichita Falls, Texas, to points in the twelve states named above, but that the authority for such service to the remaining states should be denied. In response to petitions for reconsideration by National and Morgan, Division 1, acting as an appellate division, vacated the grant of authority by Review Board Number 2. Division 1 denied the requested authority entirely, finding that Mobile had failed to establish that the present or future public convenience and necessity require the proposed operation. Reconsideration was denied by the Commission and Mobile seeks to set aside the Commission's order by this action.

In essence Mobile contends that: (1) there was error in both proceedings before the Commission by refusal to admit as evidence an unverified statement of witness Arnold Owens; (2) Division 1 erred by failing to give complete consideration to the record as a whole, including Mobile's showing in support of its temporary authority and its operations thereunder; (3) Division 1's findings are not supported by substantial evidence and the findings made were inadequate to show the part of the record relied on; and (4) Division 1 failed to recognize that there was an improper existing duopoly composed of National and Morgan for such operations.

In the action before us the defendant United States has also raised objections to the Commission's findings. On behalf of the Government the Department of Justice argues that the Commission failed to give reasoned findings to support application of its policy of protecting existing carriers in this case. The Department says that the Commission improperly ignored rate considerations and the balancing of antitrust policy and the effects of competition. Therefore, the Department asks that the case be remanded to the Commission for further consideration.

We now consider the contentions of Mobile and the Department.

### 1. *The Rebuttal Statement of Arnold Owens*

As stated, Mobile argues that the Commission erred in accepting an unverified rebuttal statement of Arnold Owens merely as argument, saying that the statement and an appendix thereto should have been admitted and considered as evidence.

The statement by Mr. Owens, president and general manager of Mobile, stated that it was confined to a discussion and rebuttal of the presentation by National and Morgan. Mr. Owens pointed out that there was no allegation by the protestants that Mobile was unable or unwilling to furnish the services proposed. Owens undertook to reply to protestants' position that there was no showing of inadequacy of their service. He referred to Mobile's temporary authority to serve Town & Country Mobile Homes of Lawton, Oklahoma, and its statement in support of Mobile's temporary authority. He also argued that it would seem unnatural for a supporting shipper to use the services of another carrier, when good and outstanding service was already available to him.

In addition Owens stated that Morgan had no specific facility at Lawton, Oklahoma, and maintained only a telephone answering service staffed by a housewife on a part-time basis in the home of one of its leased owner-operator drivers. He further stated that none of such owner-operator equipment is specifically available at any given date at a given point, contending that Morgan was not protesting to protect existing traffic but merely to keep its existing authority. A similar statement concerning the operation of National at Lawton, Oklahoma, was made. Owens stated that the protestants had not shown that revenues or traffic would be lost to them by the grant of authority to Mobile, and that what they desired was to protect their existing authorities without regard to the shipping public or its transportation requirements.

Attached to the Owens statement was a statement of support from Town & Country Mobile Homes, Inc. of Lawton. It stated that Town & Country was producing approximately ten trailers each day; that it had attempted to use the services of Morgan and National, but that they were either unwilling or unable to meet Town & Country's immediate and urgent transportation requirements. Reference was made to one unsatisfactory incident with National and to several dates on which Town & Country attempted to contact Morgan without success at their Lawton telephone.

The statements were both transmitted to the Commission's secretary by letter in support of the application for permanent authority. While the letter described the statements as the "Applicant's Verified Rebuttal Statement in Support," neither of the instruments was in affidavit form and there was no verification thereof.

Morgan moved to strike the statement on the ground that it was not confined to rebuttal of the protestants' statements as required by Rule 49, 49 C.F.R. § 1100.49. Review Board Number 2 granted the motion. The order stated that the motion appeared frivolous and dilatory, but that it would be granted so that the protestant may be assured that it had its "day in court."

In the petition for reconsideration filed by Morgan against the permanent authority granted as to twelve states by Review Board Number 2, Morgan first mentioned the lack of verification of the statements. The petition for reconsideration by National did not raise the point. Mobile's brief replying to the petitions made no mention of the lack of verification point and Mobile made no motion to amend the statements to include verification.

In its report denying the permanent authority sought by Mobile, Division 1 overruled Morgan's motion to strike and accepted the statements as argument. Because of lack of verification of the statements in accordance with Rule 50, they were not accepted as evidence.

It is to this restriction on the consideration of these statements that Mobile objects. Mobile says that acceptance as evidence of the statements is supported by Magazines, Old Sabrook, Connecticut, 315 I.C.C. 281, and Pyramid Van Lines Extension—Elimination of Gateways, 107 M.C.C. 812. We find no support for Mobile's position in the cases, and the *Pyramid* case actually ordered stricken certain exhibits because none of the statements in them was verified. Rule 50, 49 C.F.R. § 1100.50, expressly requires that facts asserted in any pleading filed under the modified procedure must be sworn to, with the signature, capacity and seal, if any, of the person administering the oath. We feel there was no abuse of discretion by Division 1 in its ruling and the consideration given to the statements as argument but not as evidence.

*2. The Proofs in Support of Mobile's Temporary Authority and Its Operations Thereunder.*

Mobile also contends that Division 1 erred by failing to give complete consideration to the record as a whole in that the Division did not adequately consider

the earlier showing in support of Mobile's temporary authority and its operations that had been conducted thereunder.

The record before Review Board Number 2 and Division 1, acting as an appellate division, was made by the parties pursuant to order of the Commission directing use of the modified procedure. See Rule 247(e)(3) of the Commission's Rules of Practice, 49 C.F.R. § 1100.247(e)(3). The order directing this procedure also fixed the date for submission of verified statements in support of the application and in opposition thereto (R. 27). Pursuant to the order the parties filed the supporting and opposing verified statements. These statements constituted the evidentiary record before Review Board Number 2.

After the ruling granting the 12-state authority to Mobile, petitions for reconsideration were filed by the protestants, National and Morgan. By order of the Commission the proceeding was reopened for reconsideration on that record for appellate review by Division 1. 112 M.C.C. at 766. In its report Division 1 stated that the evidence, the review board's report and order and the pleadings had been considered. 112 M.C.C. at 767. Moreover, the report of Division 1 recited in detail evidence considered by it which had been earlier filed pursuant to the Commission order laying down the ground rules of procedure for the hearing.

There was no restriction against evidence being submitted by Mobile as to its operations under the temporary authority and indeed references thereto were made in its supporting statements. Division 1's report shows full consideration of the verified statements submitted by Mobile, as well as those in opposition. Moreover, the statute which controls consideration by the Commission and our limited review clearly confines the consideration to be given the tempo-

rary authority. 49 U.S.C.A. § 310a(a) provides in pertinent part as follows:

" . . . Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter."

 Such temporary authority is necessarily granted without a thorough investigation into the public need or operations of the carrier and the Commission does not act at its peril or restrict its freedom of ultimate decision by a temporary grant of authority. Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894, 900 (D. Colo.). Moreover the applicant's burden of proof for a permanent certificate is not eased by a grant of temporary authority. See Bell Lines, Inc. v. United States, 306 F.Supp. 209 (S.D.W.Va.), aff'd., 397 U.S. 818, 90 S.Ct. 1517, 25 L. Ed.2d 804; Caravelle Express, Inc. v. United States, 287 F.Supp. 585 (D. Neb.); Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D.Ohio); Colorado-Arizona-California Express, Inc. v. United States, supra. We cannot say that Division 1 failed to give proper consideration to the record in respect to the temporary authority, in view of its detailed report and the limited effect of a temporary authority.

3. *The Findings and Determinations of Division 1 and the Record Evidence.*

Mobile argues further that the findings and order of Division 1 are not supported by substantial evidence and that the findings made were inadequate to show the part of the record relied on. Therefore we are called on to review the record in the manner provided by the statute in a suit to enjoin or set aside an order of the Commission. See 49 U.S.C.A. § 17(9).

 While we have a duty in this action to review the record in the light

of these contentions, our function is limited. The findings of fact by the Commission are conclusive if there is substantial evidence supporting them. I.C. C. v. Jersey City, 322 U.S. 503, 512–513, 64 S.Ct. 1129, 88 L.Ed. 1420; Virginian Railway Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463. We are instructed that the determination of the public interest is the business of the Commission under the very terms of the statute. See 49 U.S.C.A. § 307(a); United States v. Pierce Auto Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821. Our limited function is to ascertain whether there is warrant in the law and the facts for what the Commission has done, and we may not substitute our view in that respect if the record and law support the Commission's judgment. United States v. Pierce Auto Lines, supra at 536, 66 S.Ct. 687. We do not consider the record and make determinations as on a *de novo* hearing; nevertheless, the reviewing court is not barred from setting aside a decision when it cannot conscientiously find that the evidence supporting the decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the administrative view. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

██ While we should consider what Review Board Number 2 did as a part of the entire record, it is the final determination of the Commission which we review in the limited manner described. Even where there is a different finding by a trial examiner, in the final analysis it is the duty of the Commission to make its decisions and it is free to accept or reject the recommendations of the examiner. See Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 103 (D.Del.), aff'd, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779.

The report of Division 1 notes that there is an absence of evidence as to attempts by shippers to obtain service from either protestant, except proof indicating that the protestants have not solicited the supporting shippers' traffic.[1] We are satisfied that the record supports this finding. The verified statements of Town & Country indicate that this shipper has received satisfactory service from Mobile and has not called on the other carriers. While Town & Country states that only Mobile has the equipment necessary to handle a certain type of trailer, Morgan's verified statement indicates that it also has this special equipment. Town & Country states that unless Mobile receives authorization, that shipper will have to make its own deliveries; however, both Morgan and National state they are willing and able to service Town & Country. In fact Morgan stated that it had idle equipment that could be used in servicing the supporting shippers.

National states that it has received two shipments from another supporting shipper, Bolin Homes, but that Bolin does not use National's service because of the rate charged. While Bolin states that it is advised that Mobile's service is cheaper, it has never used Mobile's service.

██ In short, the three supporting shippers showed a desire for the services of Mobile but not a need therefor. Such desire is not a controlling factor. See Colorado-Arizona-California Express, Inc. v. United States, supra 224 F.Supp. at 900. The ultimate finding and determination of the Commission was that the present or future public convenience and necessity do not require the proposed service. We cannot say that the Commission's determination does not find warrant in the facts and law and we will not disturb that finding. We also find no merit in the contention that the report fails to identify the record relied on, if that is necessary. Therefore, the findings and order should not be set aside for lack of record support.

1. We note, however, that there is record evidence showing that National has solicited business from all three supporting shippers.

### 4. *Duopoly, Antitrust and Rate Considerations.*

Mobile maintains that Division 1 failed to recognize that there was an improper existing duopoly composed of National and Morgan and urges antitrust considerations. Mobile argues that the duopoly precludes the shippers from obtaining responsive service which competition would foster, and that the proof showed that no harm would flow to the protestants' service by Mobile's being granted the authority sought. Mobile urges these points as grounds for setting aside the order of Division 1 and obtaining the twelve-state authority that the Board of Review had granted.

On behalf of the United States the Department of Justice asserts similar duopoly contentions. Essentially the Department says that the Commission failed to give reasoned findings to support the application of its policy of protection for existing carriers in this case where that policy is challenged by countervailing considerations, and that the protective policy would insulate established carriers from the competitive influence of threatened entry. On these grounds the Department urges a remand of the case for further consideration.

We treat these related contentions by Mobile and the Department together. While we agree with some of the basic principles on antitrust considerations pressed by the parties, we conclude that on the record before us no error was committed by Division 1 in connection with these matters.

In such proceedings under the Motor Carrier Act the Commission is charged with the responsibility of applying the National Transportation Policy as set out by Congress. 54 Stat. 899, 49 U.S.C. preceding § 1; McLean Trucking Co. v. United States, 321 U.S. 67, 82, 64 S.Ct. 370, 88 L.Ed. 544. The Commission is thereby directed to protect carriers against unfair or destructive competitive practices. 54 Stat. 899. Even though transactions might otherwise violate the antitrust laws, Congress has authorized the Commission to approve them if it finds that they are in the public interest. See Minneapolis & St. Louis R. R. Co. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed.2d 223.

While the carriers are entitled to protection only against unfair or destructive competition, the Commission has applied the rule that an unused existing carrier should be afforded the opportunity to handle all the traffic it can transport adequately and efficiently before new competing service is authorized. Curtis, Inc. v. United States, 225 F.Supp. 894 (D.Colo.), aff'd, 378 U.S. 128, 84 S.Ct. 1658, 12 L.Ed.2d 744. This rule was relied on by Division 1 in making its determination here. 112 M.C.C. at 772. Nevertheless, existing carriers have no property right to an opportunity to remedy deficiencies in service before a new certificate may be issued. United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411, 88 S.Ct. 539, 19 L.Ed.2d 639. On appropriate findings the Commission may authorize a certificate for new service even though existing carriers might arrange to furnish successfully the projected service. Ibid.

On our record, however, we cannot agree that the Commission's findings were inadequate or that there was an abuse of discretion in denying the certificate for new service. Division 1 found that the protestants' services have either not yet been tried or they have been used on only one or two occasions. The report also found that there was a complete absence of evidence of attempts by the shippers to obtain service from either protestant, except that it indicated that the protestants have not solicited the shippers' traffic. See note 1, supra. Division 1 concluded that it was constrained from finding that these untried, or relatively untried, existing services are inadequate. We are satisfied that these findings are amply supported.

In connection with the rate considerations, Division 1 found that one shipper

avers that it has not employed protestants' services because of high rates charged.[2] The Division agreed with Review Board Number 2 that ordinarily rates charged are not a consideration in a certificate proceeding unless they are so high as to constitute an embargo. The Division found that the issue here was not so framed and that the evidence of record would not support such a restructuring of the issues. 112 M.C.C. at 771.

Again we must sustain the Commission. The rate consideration was, as stated, mentioned by the report of Division 1 and its findings in connection with the issue are supported. Also without deciding whether the theories urged by Mobile and the Department on the duopoly, antitrust and rate matters are valid, we feel in any event this case was not such as to call on the Commission to examine further into such matters or to make additional findings on them. We are satisfied that the findings were adequate and supported by the record.

Division 1 stated that it believed that Mobile had established a *prima facie* case as to the factors required to be shown by Novak Contract Carrier Application, 103 M.C.C. 555, 557, which include commodities, points of origin, volume of freight the shippers would tender, transportation services now used by shippers and any deficiencies in existing services. Division 1's report said that an imprecision in the showing as to origins or destinations will not bar a grant of authority, but such imprecision does affect the relative weight to be accorded the applicant's evidence when balanced with that offered by the protestants. Therefore, after weighing the evidence of Mobile and the protestants, Division 1 concluded it was constrained from finding that the untried, or relatively untried, existing services were inadequate, and concluded that Mobile failed to establish that present or future public convenience and necessity required the proposed operation. We believe the report gave adequate consideration to all factors required to be considered, in view of the record and the issues before Division 1.[3]

We conclude that the findings and order of Division 1 are supported and should not be disturbed. Accordingly, it is ordered and adjudged that the order of Division 1 is sustained; that the interlocutory order entered herein is vacated; that all relief is denied; and that the complaint and action are dismissed.

2. In the verified statement of Bolin Homes, Mr. Bolin said that he was advised that both Morgan and National charged approximately $1 per mile for the movement of 14 foot wide units and that Mobile has in other areas a 75 cent per mile rate on this same type of unit. Division 1's report stated that Bolin has never used Mobile's service, but believes that either the proposed services of Mobile or an increase in its private fleet will be necessary for it to remain competitive and to supply its dealers and customers.

3. The Department relies considerably upon Interstate Commerce Commission v. J–T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147· while recognizing that it dealt with a contract carrier application. We feel the distinction is significant. "That a particular shipper desires the services in question is not as weighty a factor in a § 207(a) proceeding as it would be in a § 209(b) proceeding for a permit to act as a contract carrier." Robbins v. United States, 204 F.Supp. 78, 82 (E.D.Pa.). In any event on our record we feel the factor of the interests of the shippers was not improperly or insufficiently considered.