AIME BELLAVANCE & SONS, INC. and Robert W. Belville and Freda H. Belville d/b/a New York and Vermont Motor Express, Plaintiffs,

v.

The UNITED STATES of America INTERSTATE COMMERCE COMMISSION and Theodore Rossi Trucking Co., Inc., Defendants.

No. 75–24.

United States District Court, D. Vermont.

July 11, 1977.

John P. Monte, Monte & Monte, Barre, Vt., for plaintiffs.

Thomas E. Kauper, Asst. Atty. Gen., Washington, D. C., George W. F. Cook, U. S. Atty., Jerome O'Neill, Asst. U. S. Atty., Rutland, Vt., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant the United States of America.

Charles H. White, Jr., Atty., Peter A. Fitzpatrick, Atty., Chicago, Ill., I. C. C., Washington, D. C., for defendant I. C. C.

David M. Marshall, Marshall & Marshall, Springfield, Mass., for defendant Theodore Rossi Trucking Co., Inc.

Before WATERMAN, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

## OPINION

WATERMAN, Circuit Judge:

In this action brought pursuant to 28 U.S.C. § 1336 (amended by Act of Jan. 2, 1975, Pub.L. No. 93–584, § 1, 88 Stat. 1917)[1] plaintiff trucking companies Aime Bellavance & Sons, Inc. ("Bellavance"), and Robert W. Belville and Freda H. Belville d/b/a New York and Vermont Motor Express ("Motor Express") seek annulment of, and an injunction against the enforcement of, an Interstate Commerce Commission order granting defendant Theodore Rossi Trucking Co., Inc. ("Rossi") a certificate of public convenience and necessity to haul granite from New York City to Barre, Vermont. Venue was properly laid in this district, see 28 U.S.C. § 1398(a) (amended by Act of Jan. 2, 1975, Pub.L. No. 93–584, § 2, 88 Stat. 1917), and, inasmuch as injunctive relief is requested against the operation of an order of the Interstate Commerce Commission, the case has been heard and determined by a three-judge district court, see 28 U.S.C. § 2325 (repealed by Act of Jan. 2, 1975, Pub.L. No. 93–584, § 7, 88 Stat. 1918).[2]

On January 2, 1973 Rossi filed with the Interstate Commerce Commission ("Commission" or "ICC") an application under 49 U.S.C. § 307 for a certificate of public convenience and necessity. In this application Rossi sought authority as a common carrier to haul stone over irregular truck routes from each of three specific locations (Fortsville, New York, Montague City, Massachusetts, and Highgate Springs, Vermont) to all points in the continental United States. This authority would also have encompassed the transportation of return shipments of rejected or returned stone from the places of destination to one of the three aforementioned places of origin. The application further sought authority to haul stone from ports of entry around the country to points in Vermont and New Hampshire.

In February and March of 1973 plaintiffs here and other trucking companies formally opposed the grant of the requested authority. In an order dated April 9, 1973, and served on April 19, 1973, the Commission assigned the proceeding to its "modified procedure" docket. "Modified procedure," which is used to allow efficient and expeditious disposition of applications which do not raise transportation issues of any substantial importance, operates primarily on the basis of "verified statements."[3] These are sworn statements on which must appear the names and seals, if any, of the persons who administered the oaths to the affiants. See 49 C.F.R. § 1100.50. Under "modified procedure" the application for motor carrier

---

1. Injunctions against enforcement of ICC orders are now obtainable only through direct court of appeals review of such orders, see 28 U.S.C. § 2342, rather than, as formerly, by civil actions brought before three-judge district courts, see 28 U.S.C. § 1336(a) (amended by Act of Jan. 2, 1975, Pub.L. No. 93–584, § 1, 88 Stat. 1917); id. § 2325 (repealed by Act of Jan. 2, 1975, Pub.L. No. 93–584, § 7, 88 Stat. 1918). The civil action here, however, was filed on January 29, 1975, about one month before the effective date of the new procedures, February 28, 1975. See Act of Jan. 2, 1975, Pub.L. No. 93–584, § 10, 88 Stat. 1918.

2. See note 1 supra.

3. Under the Commission's General Rules of Practice any document filed under modified procedure (which would include a verified statement, of course) is considered a "pleading." See 49 C.F.R. § 1100.5(d).

authority is determined solely on the basis of these verified statements unless one of the parties requests an oral examination of witnesses and shows that the verified statements raise a factual issue material to the disposition of the pending application. *See* 49 C.F.R. § 1100.53. Any failure to comply with the "modified procedure" rules causes a party to be in default and any further hearing for that party is deemed waived. 49 C.F.R. § 1100.46(b).

In addition to assigning the case to the "modified procedure" docket, the Commission's order of April 9, 1973 also established a timetable for the filing of verified statements in support of or in opposition to Rossi's pending request for motor carrier authority. Although two of the protestant trucking companies filed verified statements in opposition to the requested grant of authority, none of the other protestants, including plaintiffs here, did. Instead, Bellavance and Motor Express filed unverified statements. Rossi submitted a verified statement in support of its own application and also supported its application by filing the verified statements of two granite shippers. After the filing of protestants' statements, Rossi submitted another verified statement as rebuttal evidence.

On December 19, 1973 the Commission (Review Board Number 1) issued its decision on Rossi's pending application for motor carrier authority. An important facet of that decision was the striking of all unverified statements, including all statements submitted by plaintiffs. In doing so, the Commission stated:

[A]s noted by applicant in rebuttal, the statements submitted by protestants Aime Bellavance & Sons, Inc., Norman F. George, Inc., Estate of Lawrence Andrew LaFountain, doing business as Barre Granite Transfer, Williams Motor Transfer, Inc., New York and Vermont Motor Express, and Ray Churchill Trucking Co., Inc., fail to show the signature, capacity, and impression seal, if any, of the person administering the oath; . . . although verification of statements filed under modified procedure need not be made in the exact form described in the Commission's General Rules of Practice (49 C.F.R. § 1100.50 and Appendix B thereto), it is necessary that the facts asserted in any pleading filed under the modified procedure be sworn to by persons having knowledge thereof, and that the original of any such factual statement show the signature, capacity, and impression seal, if any, of the person administering the oath, and the date thereof; . . . inasmuch as the statements filed by the above-named protestants do not meet these basic requirements, such statements are not properly verified in accordance with the Commission's General Rules of Practice (49 C.F.R. § 1100.50); . . . accordingly, protestants' statements will be stricken from the record herein; and good cause appearing therefor:

*It is ordered,* That the statements submitted by the protestants named in the immediately preceding paragraph be, and they are hereby, stricken from the record;

Despite the fact that it had decided that the unverified statements should be disregarded, the Commission nevertheless ruled, for reasons specified in the decision, that Rossi had "failed to establish that the present or future public convenience and necessity require the proposed operation." Accordingly, the Commission determined that the application should be denied in its entirety. The order of December 19, 1973 was served on all parties on January 2, 1974. Believing that they had achieved their goal of preventing the issuance of a certificate to Rossi, plaintiffs took no steps to correct the deficient statements which the Commission had stricken from the administrative record.

Dissatisfied with the complete denial of its application, Rossi, on January 23, 1974, filed a petition for reconsideration of the Commission's decision. In its petition, however, Rossi sought the grant of a much more circumscribed type of authority than it had previously sought. Specifically, Rossi's sole request at this point was that it be granted authority to haul granite by motor carrier over irregular routes from New

York City to Barre. Rossi argued that the amended authority it now sought was fully supported by the administrative record as it stood at the time of the Commission's decision on December 19, 1973.

Rossi claims that it served its petition for reconsideration upon all parties of record, and also upon plaintiffs. Plaintiffs dispute this. In any event, having decided on the basis of the papers filed by Rossi that the proceeding should be reopened, the Commission (Division 1, acting as an Appellate Division), ruled on July 23, 1974 "[t]hat the present and future public convenience and necessity require operation by [Rossi], in foreign commerce only, as a common carrier by motor vehicle, over irregular routes, of granite, from New York, N. Y., to Barre, Vermont" and that therefore a certificate of public convenience and necessity should be issued upon Rossi's compliance with further requirements of the Interstate Commerce Act. The Commission's order was served on July 30, 1974.

██ On August 19, 1974 plaintiffs filed a "Petition for Reconsideration and Motion for Leave to Correct Verified Statements and to Intervene" and a separate document entitled "Motion for Stay of Order." In the petition for reconsideration plaintiffs conceded that before and at the time Rossi filed its petition for reconsideration on January 23, 1974 plaintiffs "pursuant to 49 C.F.R., Section 1100.101(5)(e) [sic] could have filed for reconsideration and corrections of [plaintiffs'] initial verified statements." They asserted, however, that, inasmuch as they believed that the Commission's denial of Rossi's original application sufficiently protected their interests and, because they allegedly had not been served with a copy of Rossi's January 23, 1974, petition, it had not been evident to them that correction of their concededly deficient statements was necessary to safeguard their rights. Relying upon Rossi's alleged failure to notify plaintiffs of the filing of

Rossi's petition for reconsideration, and charging that the Commission had failed "to follow the directives of 49 C.F.R., Section 1100.4(c)," plaintiffs asserted that they had been deprived of property without due process of law[4] and they sought leave to correct the admitted deficiencies in the original unverified statements, sought leave to respond to Rossi's petition for reconsideration, sought a vacation of the Commission's order, dated July 23, 1974, which granted Rossi's petition, and sought the issuance of a new order based upon an augmented record.

Rossi responded to plaintiffs' newly filed papers, claiming that it had indeed served plaintiffs' attorney with its petition for reconsideration, and did so by first class mail, postage prepaid, on January 22, 1974.

The Commission (Division 1, acting as an Appellate Division) reached its decision on plaintiffs' pending petition and motion on October 24, 1974. In support of its denial of the relief sought by plaintiffs, the Commission offered as reasons for its decision:

(a) that the order of Appellate Division 1, entered July 23, 1974 in the above-entitled proceeding, was entered in accordance with the evidence and the applicable law; (b) that Aime Ballavance [sic] & Sons, Inc., and New York and Vermont Motor Express have been parties to this proceeding by virtue of their protests filed herein on March 19, 1973, but that they failed to file statements properly verified in accordance with the order entered herein on April 9, 1973, which directed that the above-entitled proceeding be handled under modified procedure; (c) that, accordingly, Aime and New York have had an adequate opportunity to protect their interests, but that, in accordance with the Commission's General Rules of Practice (49 C.F.R. § 1100.46(b)) are deemed to be in default and to have waived any further hearing; and (d) that the pleading in question affords no proper basis for permitting petitioners to in-

4. Although such a constitutional cause of action was also presented in the complaint here, plaintiff, by not discussing or even referring to the point in the two briefs he has submitted here, has waived the cause of action and we therefore have no occasion to consider whether any of the Commission's actions or rules violated any of plaintiffs' constitutional rights.

tervene in the proceeding at this late date or for further considering the matter.

Following the rejection of plaintiffs' attempts to reopen the proceedings, the ICC issued a certificate of public convenience and necessity to Rossi on December 9, 1974. About two months later, on January 29, 1975, the instant civil action was filed.

Plaintiffs assert in their brief here that the certificate issued to Rossi should be annulled and the case remanded to the ICC for a reopening of the administrative record because the Commission supposedly abused its discretion in denying plaintiffs' petition for reconsideration. This abuse of discretion is said to have arisen in two distinct ways. First, plaintiffs argue in Point I of their brief here that the Commission abused its discretion in refusing to reopen the record because the verified statements plaintiffs sought to introduce by way of their August 19, 1974, petition for reconsideration, if the statements had been considered by the Commission as part of a reopened administrative record, would have stripped that record of any substantial evidence supporting the findings required for the issuance of a certificate to Rossi. Secondly, plaintiffs contend that the ICC's refusal to reopen the record was an abuse of discretion because, at the time the plaintiffs originally submitted their concededly deficient verified statements, the ICC violated its own rules of practice by merely striking the statements from the record instead of granting plaintiffs the opportunity to correct the deficient statements prior to the issuance of the ICC's original adverse decision on Rossi's application. We reject each of these arguments.

Plaintiffs' first argument can be summarily rejected. By arguing that the substance of the verified statements submitted with plaintiffs' petition for reconsideration would have stripped the then-existing record of substantial evidence supporting the Commission's decision to issue a certificate, the plaintiffs fail to recognize that the substance of the evidence they sought to introduce in a reopened proceeding is immaterial to the question of whether the proceedings should be reopened so that the verified statements could be inserted into the record. Under Rule 101(b) of the Commission's General Rules of Practice, 49 C.F.R. § 1100.101(b), plaintiffs had the burden of offering an "explanation . . . why such evidence was not previously adduced." Inasmuch as 49 U.S.C. § 17(3) requires that the Commission's rules of practice "shall conform, as nearly as may be, to those in use in the courts of the United States," it is somewhat useful to refer to the Federal Rules of Civil Procedure for general guidance in deciding what type of "explanation" would be sufficient. See Buckner Trucking, Inc. v. United States, 354 F.Supp. 1210, 1218, 1220 (S.D.Tex.1973) (three-judge court). Of particular relevance are the provisions of Rule 60(b) of the Federal Rules of Civil Procedure, the rule which sets forth the grounds for seeking reopening of judicial proceedings. If Fed.R.Civ.P. 60(b) were expressly applicable in the ICC proceedings, plaintiffs surely could not claim that by their petition for reconsideration they were seeking to present "newly discovered evidence" under Fed.R.Civ.P. 60(b)(2), for "if [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered and does not entitle him to relief." 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2859, at 182–83 (1973). The evidence plaintiffs were seeking to present was fully available to them during the initial stages of the proceedings and its introduction was frustrated not by justifiable ignorance of its existence but by plaintiffs' noncompliance with the ICC's General Rules of Practice regarding the "modified procedure" requirements for the use of verified statements.

■ The other potentially relevant grounds set forth in Fed.R.Civ.P. 60(b)— "mistake, inadvertence, . . . excusable neglect [or] any other reason justifying relief from the operation of the judgment" —are all matters entrusted very much to the discretion of the district court, 11 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2857, at 157 (1973); id.

§ 2872, at 261; *Sampson v. Radio Corporation of America,* 434 F.2d 315, 317 (2d Cir. 1970), and "appellate courts pay considerable deference to that discretion in the district court." 11 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2872, at 261 (1973). While, by analogy, the Commission could have conceivably relied upon any one of these grounds to grant the relief plaintiffs requested, such a decision was for the Commission to make, and, that decision having been made, we cannot say that the Commission clearly abused its discretion in making it. It is surely within the agency's prerogative, in the interest of effectively managing its caseload, to insist upon strict compliance with its rules of practice. *Petroleum Carrier Corp. v. United States,* 380 F.Supp. 744, 748–53 (M.D.Fla.1974) (three-judge court); *Buckner Trucking, Inc. v. United States, supra* at 1219–21; *Smith & Solomon Trucking Co. v. United States,* 255 F.Supp. 243, 250, 253 (D.N.J.1966) (three-judge court). Petitions for reconsideration are addressed to the ICC's discretion, *e. g., Petroleum Carrier Corp. v. United States, supra* at 750; *Buckner Trucking, Inc. v. United States, supra* at 1222, and, even if we might have been inclined to exercise that discretion differently than did the agency, we cannot simply substitute our judgment for that of the Commission. *See, e. g., Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1975); *United States v. Pierce Auto Freight Lines,*

*Inc.,* 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); *Mobile Home Express, Ltd. v. United States,* 354 F.Supp. 701, 707 (W.D. Okla.1973) (three-judge court); *Accelerated Transport-Pony Express, Inc. v. United States,* 227 F.Supp. 815, 821 (D.Vt.) (three-judge court), *aff'd per curiam,* 379 U.S. 4, 85 S.Ct. 43, 13 L.Ed.2d 21 (1964). Rather, if plaintiffs are to succeed here, we must be able to say that the Commission's refusal to release the plaintiffs from the undesirable effects of their own noncompliance with procedural rules was a clear abuse of discretion. *See, e. g., United States v. Pierce Auto Freight Lines, Inc., supra,* 327 U.S. at 535, 66 S.Ct. 687; *Buckner Trucking, Inc. v. United States, supra* at 1222. On the record before us, this we cannot do. Finally, we would note that plaintiffs have not overcome the presumption of validity, *see, e. g., Buckner Trucking, Inc. v. United States, supra* at 1217; *Smith & Solomon Trucking Co. v. United States, supra* at 249; *Accelerated Transport-Pony Express, Inc. v. United States, supra* at 821, which attaches to orders of the ICC.[5]

Plaintiffs next contend that the granting of their motion for reconsideration was required because the Commission itself, in previously striking plaintiffs' defective verified statements from the record, violated one of its own rules of practice, a rule which the plaintiffs assert *required* that the Commission, upon finding the verified

---

**5.** While we believe, as already explained, that under prior case law the scope of our review of ICC action is severely circumscribed, we do not agree with the argument advanced by defendant Rossi, but not by the ICC, that the scope of *judicial review* is made more narrow by the mere fact that the certificate of public convenience and necessity has already been issued by the ICC.

Rossi contends that 49 U.S.C. § 212 dictates such a result. But that section is designed only to restrict ICC reconsideration and modification of certificates it has already issued and could not be intended to restrict the scope of judicial review in cases such as here, where the court proceeding is essentially a direct and immediate appeal to this court from the issuance of the certificate and from the administrative orders and actions which necessarily preceded it. Acceptance of Rossi's argument would render essentially useless those statutes which provide for judicial review of ICC actions. The ICC authority upon which Rossi relies was concerned only with the question of the nature of the inherent authority of a tribunal, such as the ICC, to alter what are, in essence, its own "final judgments." Such precedents can have no bearing here, however, where the independent authority of this three-judge court under 28 U.S.C. § 1336(a) (amended by Act of Jan. 2, 1975, Pub.L.No. 93–584, § 1, 88 Stat. 1917); *id.* § 2325 (repealed by Act of Jan. 2, 1975, Pub. L.No. 93–584, § 7, 88 Stat. 1918) is essentially that of an appellate body, and our function in this civil action, which was commenced shortly after the ICC's issuance of the certificate to Rossi, is to review the correctness of, and the legal foundation for, the issuance of that certificate.

statements to be defective, either accept them for filing and allow plaintiffs to rectify the mistakes or, alternatively, to reject them and return them to plaintiffs with notification that they were being rejected.

Neither of these two alternatives seems to be the approach taken by the Commission here, where, although the defective statements apparently *were* accepted for filing, they were not returned to plaintiffs but instead were simply stricken from the record at the time of the initial decision in the administrative proceeding. There is, however, a possible infirmity in plaintiffs' argument, for the rule upon which plaintiffs rely, Rule 4(c) of the Commission's General Rules of Practice, 49 C.F.R. § 1100.-4(c), can conceivably be construed so that it permits, but does not require, the Commission either (1) to accept a defective paper tendered for filing and then to demand that the deficiency be corrected or (2) to decline to accept the paper for filing and then, in its discretion, to return this unfiled paper to the party who attempted to file it. Thus, inasmuch as Rule 4(c) is phrased exclusively in permissive rather than mandatory terms, it can be argued, as does the Commission here, that the ICC was not required to pursue one of the approaches set forth in Rule 4(c) but could adopt some other reasonable course. The alternative approach selected by the Commission here, namely, accepting the paper for filing but striking it from the record at the time of the original decision on Rossi's application, can be regarded as a reasonable course of action inasmuch as an agency faced with overloaded dockets should not be expected to assume additional administrative burdens because the litigants before the Commission have blundered.

 Despite Rule 4(c)'s extensive use of the word "may," it can be contended that

that section was intended to set forth the *exclusive* means of disposing of defective documents, with the Commission retaining only the limited discretion to select which of the methods specified there should be used in a particular case.[6] However, even assuming arguendo that this interpretation of Rule 4(c) is the correct interpretation, we nonetheless conclude that even if the ICC did fail to comply with Rule 4(c), the plaintiffs had sufficient notice that their statements were unverified statements and had ample opportunity to seek corrections of the deficiencies. Thus, plaintiffs waived any right to rely on the Commission's allegedly erroneous actions as the basis for their belated attempt to obtain reconsideration.

If, in fact, the methods specified in Rule 4(c) are the exclusive means for handling defective papers, the Commission apparently did not comply with the rule. Specifically, since the Commission did *file* the defective statements, the clause stating "the Commission may accept it for filing" applies and, having accepted the defective papers for filing, the Commission would then seemingly be required to "advise the person tendering it of the deficiency and require that the deficiency be corrected." Instead of doing this, however, the Commission simply waited until the time of its initial decision, on December 19, 1973, to apprise plaintiffs of the fact that their statements were deficient.

What we think is crucial here, however, is that despite the fact that the plaintiffs did not have an opportunity to correct the defective statements prior to the rendering of the Commission's initial decision on December 19, 1973, they conceded in their papers supporting their motion for reconsideration that "pursuant to 49 C.F.R., Section 1100.-101(5)(e) [sic] [they] could have [during a

6. While generally "may" is permissive, "the context in which the word appears must be the controlling factor." *United States v. Cook,* 432 F.2d 1093, 1098 (7th Cir. 1970), *cert. denied,* 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971). Although it may be true here that the Commission "may," in its discretion, accept a defective paper and require that it be corrected or, alternatively, "may," in its discretion, decline to accept a paper and return it to the sender, it may also be true that under 49 C.F.R. § 1100.4(c) the Commission *must* do one or the other. Such a construction is somewhat suggested by the precise enumeration of the things the Commission "may" do. In this sense, therefore, the context may impose a significant limitation upon the discretion that might otherwise arise from use of the word "may."

30-day period following the initial decision denying Rossi's application] filed for reconsideration and correction of [plaintiffs'] initial verified statements." Plaintiffs urge, however, that, inasmuch as the ICC's denial of the Rossi application was their goal and because they allegedly were not served with a copy of Rossi's petition for reconsideration, it was not at all evident to them that they should seek reconsideration so as then to correct their unverified statements.

 We believe there were, however, even at that stage, practical reasons for seeking to perfect the administrative record. The filing of the defective statements had the effect of putting plaintiffs in default, *see* 49 C.F.R. §§ 1100.46(b),[7] 1100.50, and any further proceedings, unlikely though plaintiffs may have thought them to be, could be carried on without notice to or participation by plaintiffs. The likelihood of further administrative proceedings initiated by Rossi was, moreover, enhanced by what could be construed as the Commission's veiled invitation, in denying Rossi's original application, to initiate same:

> [I]n summary, the evidence furnished by shipper concerning its reasonable transportation needs with respect to the involved traffic is vague and indefinite; . . . *more specific information is needed to enable us to ascertain shipper's transportation requirements so that we are able to frame a grant of authority for applicant* responsive to shipper's needs and consistent with established Commission policy; . . . therefore, with regard to part (3) of the proposed operation, applicant has failed to make a prima facie case . . .. (Emphasis supplied.)

Therefore, plaintiffs' own interest in continued participation in any further administrative proceedings was at stake and could be protected only by seeking to be relieved of their continuing default. Secondly, perhaps more foreseeable to plaintiffs should have been the likelihood of a court action by Rossi challenging the ICC's denial of the requested motor carrier authority. An obvious potential issue in such litigation would be the substantiality of the evidence upon which the Commission had predicated its denial of Rossi's application for a certificate of public convenience and necessity. It was to plaintiffs' obvious advantage to have that evidentiary record, which supported the Commission's denial, strengthened by the addition of plaintiffs' opposing evidence and it seems that the agency's rules of practice relative to reconsideration, *see* 49 C.F.R. § 1100.101, were broad enough to permit such relief. Thus, plaintiffs had both practical reasons and a sufficiently seasonable opportunity to seek the relief they eventually sought in July of 1974 and now seek before us, namely, inclusion of their evidentiary statements in the administrative record. They voluntarily waived that opportunity, however, and, having done so, cannot complain of the ICC's refusal in November of 1974 to reopen the proceedings for the purpose of adding plaintiffs' verified statements to the record. We agree with the Commission's determination that plaintiffs "had an adequate opportunity to protect their interests."

 We therefore conclude that the ICC rulings challenged by plaintiffs should be upheld.[8] Accordingly, the complaint is dis-

---

7. Rule 46(b), 49 C.F.R. § 1100.46(b) provides:

 (b) *Default where failure to comply.* If within any time period provided in the modified-procedure rules a party fails to file a pleading required by those rules, or otherwise fails to comply therewith, such party shall be deemed to be in default and to have waived any further hearing. Thereafter the proceeding may be disposed of without further notice to the defaulting party, and without other formal proceedings as to such party.

 There is no dispute that plaintiffs did not comply with one of the modified-procedure rules,

Rule 50, 49 C.F.R. § 1100.50, which required that all statements be verified, and it is thus clear that plaintiffs were in default. This being so, it was not necessary, under the Commission's rules of practice, for Rossi to notify plaintiffs of any further proceedings and it is therefore immaterial whether Rossi notified plaintiffs, as it claimed it did, of the filing of Rossi's petition for reconsideration.

8. Although plaintiffs do not appear to argue that the record, as it now stands, is insufficient to support the limited motor carrier authority

782

missed. Each party shall bear its own costs.

The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

HOLDEN and COFFRIN, JJ., concur.

granted to Rossi by the Commission, we have nevertheless reviewed the record and find that there is adequate support there for the Commission's grant of authority to Rossi.